Cecilia Mangaoang
2901 Capewood Lane
San Jose, CA 95132-1108
(408) 876-9950

**FILED**

DEC 7 - 2018

CLERK
United States Bankruptcy Court
San Jose, California



# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE:
    Cecilia Mangaoang,

    Debtor.

-------------------------------------------------

Cecilia Mangaoang,

    Plaintiff,

    vs.

SPECIAL DEFAULT SERVICES, INC.;

TRINITY FINANCIAL SERVICES, LLC;

NEWPORT BEACH HOLDINGS, LLC;

Does # 1-10, inclusive,

    Defendants.

Case No. 18-52245 MEH

Adv. No. 18-05062

**VERIFIED AMENDED
ADVERSARY COMPLAINT**

**Quiet Title,**

**FDCPA (15 U.S.C. § 1692-1692o),**

**Cancellation of Instrument,**

**Wrongful Foreclosure**

**[ Injunctive Relief Requested ]**

## PRELIMINARY NOTES

1. The First Deed and the Second Deed do not bear Plaintiff's signature.

2. MERS could not act as nominee for non-member AIDAN WEST FINANCIAL GROUP (the "Lender"). Therefore, the Second Deed is void and could not be used as a reason to sell the Property.

3. On its face, the SUBSTITUTION OF TRUSTEE was signed by Don A. Madden, Jr. at most in his individual capacity, and NOT as an officer, employee or agent of NEWPORT BEACH

1

VERIFIED AMENDED ADVERSARY COMPLAINT

HOLDINGS, LLC. Therefore, Special Default Services, Inc. was not Trustee and could not sell the Property.

4. Defendants failed to comply with any of the conditions precedent set forth in paragraph 22 of the subject (Second) Deed of Trust.

5. There were multiple violations of Cal.Civ.Code §2923.3 and §2923.5 and §2924.

6. Trinity (the purported Creditor and purchaser at the sale) purchased with a Credit Bid, yet Trinity was not the present beneficiary of the Second Deed, in violation of Cal. Civ. Code § 2924h(b).

7. Trinity and Newport Beach are not registered with the Nationwide Mortgage Licensing System and do not have a bond or a Residential Mortgage Lending Act License,[1] nor a license under the California Finance Lenders Law or California Real Estate Law.

8. At all relevant times, NEWPORT BEACH HOLDINGS, LLC had a status of "FTB FORFEITED" with the California Secretary of State.

9. **Plaintiff requests an immediate injunction enjoining Defendants from filing an eviction (forcible entry / unlawful detainer lawsuit)**, and from reporting negative information to any credit bureau pending resolution of this case. **An eviction action should not be filed while a title dispute is pending.**

## PARTIES

*PLAINTIFF*

10. Cecilia Mangaoang is a citizen of California.

*SPECIAL DEFAULT SERVICES, INC.*

11. Defendant Special Default Services, Inc. ("SDS") is a California corporation, and can

ADVERSARY COMPLAINT

2

be served via its Registered Agent, MARISOL NAGATA, address 17100 GILLETTE AVENUE, IRVINE CA 92614.

12. At all or some relevant times, SDS purported to act as Trustee.

13. At all or some relevant times, SDS purported to be an agent of Newport Beach.

### TRINITY FINANCIAL SERVICES, LLC

14. Defendant TRINITY FINANCIAL SERVICES, LLC ("Trinity") is a Wyoming limited liability corporation, with head office at 1621 CENTRAL AVE CHEYENNE WY 82001, and another office at 2618 SAN MIGUEL DRIVE, SUITE 303, NEWPORT BEACH, CA 92660, and can be served at:

> TRINITY FINANCIAL SERVICES, LLC
> c/o RICARDO OROZCO, Registered Agent
> 1220 S ST STE 150
> SACRAMENTO CA 95811

### NEWPORT BEACH HOLDINGS, LLC

15. Defendant NEWPORT BEACH HOLDINGS, LLC ("Newport Beach") is a Nevada corporation (E0091212011-1, NV20111113607), with offices at 2618 San Miguel Dr, Ste 319, Newport Beach, CA 92660, and can be served at:

> NEWPORT BEACH HOLDINGS, LLC
> c/o INCORP SERVICES, INC., Registered Agent
> 3773 HOWARD HUGHES PKWY STE 500S
> LAS VEGAS, NV 89169-6014

16. NEWPORT BEACH HOLDINGS, LLC has a status of "FTB FORFEITED" with the California Secretary of State.

17. At all relevant times, NEWPORT BEACH HOLDINGS, LLC had a status of "FTB FORFEITED" with the California Secretary of State.

---

¹ This license is required for any company or person who makes or services residential mortgage loans in California.

ADVERSARY COMPLAINT                                                                                          3

18. NEWPORT BEACH HOLDINGS, LLC claims to be the Creditor.

19. NEWPORT BEACH HOLDINGS, LLC is merely the servicer, and not the owner, of the loan.

20. NEWPORT BEACH HOLDINGS, LLC does not own any Note encumbering the Property.

21. At all relevant times, NEWPORT BEACH HOLDINGS, LLC was not registered to do business in California.

*DOES #1-10*

22. The Doe defendants #1-10 have some claim to ownership or possession of evidence of purported debt allegedly secured by the Property, or conspired with the other Defendants, or defamed Plaintiff.

23. All Defendants are jointly and severally liable.

## FACTUAL ALLEGATIONS

24. All the following allegations are intended to be "without limitation" and will be supplemented by other facts to be found in discovery.

*OWNERSHIP AND POSSESSION*

25. Plaintiff is the owner of, and domiciled at, the property located at 2901 Capewood Lane, San Jose, CA 95132-1108, legally described as:

> **ALL OF LOT 436, AS SHOWN UPON THAT CERTAIN MAP ENTITLED, 'TRACT NO. 3465 NORTHWOOD PARK UNIT NO. 4', WHICH MAP WAS FILED FOR RECORD IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SANTA CLARA, STATE OF CALIFORNIA, ON JUNE 28, 1963, IN BOOK 163 OF MAPS, PAGES 22 AND 23.**
>
> **EXCEPTING THEREFROM THE UNDERGROUND WATER RIGHTS WITH NO RIGHT OF SURFACE ENTRY AS CONVEYED TO SAN JOSE**

ADVERSARY COMPLAINT

WATER WORKS, A CALIFORNIA CORPORATION BY INSTRUMENT RECORDED DECEMBER 10, 1963 IN BOOK 6302 OF OFFICIAL RECORDS, AT PAGE 467.

APN : 092-11-091

(hereafter "the Property").

26.     The Property is located in a judicial district of California under the 1849 Constitution.

27.     The Property is not located in territory owned by or subject to the exclusive legislative jurisdiction of the United States of America.

28.     The Property is not located within the Federal Housing Act area where Congress has exclusive legislative jurisdiction (Art I Sec 8 Clause 17; Art 4 Sec 3 Clause 2).

29.     The Property is not located within any place that has been ceded to the Federal Government by act of the California Legislature. Therefore, the loan was made in violation of the Federal Housing Act and the Deed of Trust should be cancelled.

30.     Plaintiff is, and has been since on or about January 18, 2007, in continuous possession of the Property.

31.     Plaintiff has did not make a forcible entry into the Property.

32.     Plaintiff is not unlawfully holding the possession of the Property by force.

33.     Plaintiff and Defendants do not have a landlord-tenant relationship.

34.     Plaintiff has never sold the Property.

35.     Plaintiff has never intended to irrevocably grant or convey the Property to any party.

36.     Plaintiff has never been served with any Notice of Trustee's Sale.

ADVERSARY COMPLAINT

5

**THE DEED TO PLAINTIFF**

37. On 1/18/2007, Betty C. Chen recorded with the Santa Clara County Recorder, as Document #19268023, a GRANT DEED dated 1/8/2007, conveying the Property to Plaintiff.

**THE FIRST DEED OF TRUST**

38. On 1/18/2007, AIDAN WEST FINANCIAL GROUP recorded with the Santa Clara County Recorder, as Document #19268025, a DEED OF TRUST ("First Deed") dated 1/9/2007.

39. The First Deed does not bear Plaintiff's signature.

40. Each Rider to the First Deed does not bear Plaintiff's signature.

41. The First Deed defines "Borrower" as "CECILIA MANGAOANG, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY."

42. The First Deed defines "Lender" as "AIDAN WEST FINANCIAL GROUP."

43. The First Deed defines "Trustee" as "FIDELITY NATIONAL TITLE."

44. The First Deed defines "Note" as "the promissory note signed by Borrower and dated JANUARY 9, 2007 [which] states that Borrower owes Lender FIVE HUNDRED TWENTY-FOUR THOUSAND AND 00/100 Dollars."

45. Plaintiff did not sign any Note dated JANUARY 9, 2007.

46. Plaintiff has never signed any Note stating that Plaintiff owes AIDAN WEST FINANCIAL GROUP.

47. Plaintiff has never signed any Note in the amount of "FIVE HUNDRED TWENTY-FOUR THOUSAND AND 00/100 Dollars."

Case: 18-05062    Doc# 7    Filed: 12/07/18    Entered: 12/07/18 09:09:09    Page 6 of 32

48.     The First Deed states: "The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS."

49.     AIDAN WEST FINANCIAL GROUP has never been a member of MERS.

50.     AIDAN WEST FINANCIAL GROUP has never been a nominee of MERS.[2]

51.     Therefore, the First Deed lacks a beneficiary. Therefore, the First Deed is void and should be cancelled.

52.     The First Deed states:

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

53.     Plaintiff did not draft the First Deed.

54.     Plaintiff does not know who drafted the First Deed.

55.     As of 1/9/2007, Plaintiff was never "seised" of the Property.

56.     Plaintiff has never agreed to "defend generally the title to the Property against all claims and demands, subject to any encumbrances of record."

57.     "Wilmington Trust NA, successor trustee to Citibank, N.A. as Trustee, for the benefit of registered holders of Structured Asset Mortgage Investments II Trust 2007-AR3, Mortgage Pass-Through Certificates, Series 2007-AR3" claims to be a creditor under the First Deed. If that party files a Proof of Claim, then Plaintiff will need to amend this Complaint.

58.     Select Portfolio Servicing, Inc. claims to be a servicer under the First Deed, however is not.

ADVERSARY COMPLAINT                                                                              7

## THE SECOND DEED OF TRUST

59.    On 1/18/2007, AIDAN WEST FINANCIAL GROUP recorded with the Santa Clara County Recorder, as Document #19268026, a DEED OF TRUST ("Second Deed") dated 1/9/2007.

60.    The Second Deed does not bear Plaintiff's signature.

61.    Each Rider to the Second Deed does not bear Plaintiff's signature.

62.    The Second Deed states: "THIS DEED OF TRUST IS SECOND AND SUBORDINATE TO THE FIRST DEED OF TRUST RECORDING CONCURRENTLY HEREIN."

63.    The Second Deed does not contain any definition section.

64.    The Second Deed states:

THIS DEED OF TRUST is made this JANUARY 9, 2007, among the Trustor, CECILIA MANGAOANG, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY (herein "Borrower"), FIDELITY NATIONAL TITLE [address] (herein "Trustee"), and AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION, organized and existing under the laws of the State of CALIFORNIA [address] (herein "Lender").

WHEREAS, this Security Instrument is given to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), as beneficiary, which is acting solely as nominee for Lender (as hereinabove defined) and Lender's successors and assigns.

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated JANUARY 9, 2007, and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $131,000, with interest... [Note: The interest rate was never specified.]

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record

---

[2] MERS never acts as nominee for a non-member. See the MERS Procedures Manual.
ADVERSARY COMPLAINT

8

65. Plaintiff did not sign any Note dated JANUARY 9, 2007.

66. Plaintiff has never signed any Note stating that Plaintiff owes AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION.

67. Plaintiff has never signed any Note in the amount of "$131,000."

68. Plaintiff did not draft the Second Deed.

69. Plaintiff does not know who drafted the Second Deed.

70. "AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION, organized and existing under the laws of the State of CALIFORNIA" has never been a member of MERS.

71. "AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION, organized and existing under the laws of the State of CALIFORNIA" has never been a nominee of MERS.

72. Therefore, the Second Deed lacks a beneficiary. Therefore, the Second Deed is void and should be cancelled.

73. As of 1/9/2007, Plaintiff was never "seised" of the Property.

74. Plaintiff has never agreed to "defend generally the title to the Property against all claims and demands, subject to any encumbrances of record."

*THE ALLEGED LOAN*

75. Defendants claim that AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION lent money to Plaintiff.

76. Defendants claim that AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION lent credit to Plaintiff.

77.     Plaintiff did not receive a loan of money from AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION.

78.     Plaintiff did not receive a loan of credit from AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION.

79.     Each of the Notes alleged by Defendants (hereafter "each Note") is not a negotiable instrument under UCC 3.104 because the "promise to pay" is governed by other, separate documents and is therefore not unconditional.

80.     Each Note is not a negotiable instrument under UCC 3.104 because the total amount to pay includes interest which will change and therefore is not a sum certain.

81.     Each Note is not a negotiable instrument under UCC 3.104 because it is not "payable on demand or at a definite time" because it is payable in monthly installments.

82.     Any Defendants who took any Note encumbering the Property had notice of all, each and every defense(s) to it, including but not limited to: Fraud in the execution (this occurs when a person is deceived into signing a negotiable instrument believing that he is signing something other than a negotiable instrument); Material alteration; Discharge in bankruptcy; Breach of contract or breach of warranty; Lack or failure of consideration; Fraud in the inducement.

83.     No Defendant was ever owner nor holder of any Note encumbering the Property.

84.     All Defendants' General Ledger accounting entries show that AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION did not lend money.

85.     All Defendants' General Ledger accounting entries show that AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION did not lend credit.

86.　　The loan was securitized.

87.　　The Pooling and Servicing Agreement, Master Servicing Agreement and Sub-Servicing Agreements will show that the transaction is generally not the transaction that Defendants claim it is.

88.　　There was no "true sale" into the securitization trust.

89.　　Plaintiff never owed the amount(s) claimed by Defendants.

90.　　The purported Trustee was not notified that it was named as Trustee and therefore could not exercise its powers and had no powers and was not in in any practical sense a Trustee.

91.　　No Note bearing Plaintiff's signature was conveyed from any Defendant to any other Defendant.

92.　　No Note bearing Plaintiff's signature was delivered from any Defendant to any other Defendant.

93.　　No Note bearing Plaintiff's signature was negotiated from any Defendant to any other Defendant.

94.　　No Defendant was a bona fide purchaser for value of any Note encumbering the Property.

95.　　No Defendant ever held any Note encumbering the Property, or such Note has been lost or stolen or destroyed or cancelled or further assigned.

96.　　Within 30 days after the date on which any Note or Loan encumbering the Property was sold or otherwise transferred or assigned to a new party, the creditor that was the new owner or assignee of the debt DID NOT notify Plaintiff in writing of such transfer. (See 131 of the Truth in Lending Act (15 U.S.C. 1641).)

Case: 18-05062　　Doc# 7　　Filed: 12/07/18　　Entered: 12/07/18 09:09:09　　Page 11 of 32

97.     Any Note encumbering the Property was pledged as collateral for other secured transactions.

98.     As part of the purported transaction, a national bank lent its credit, directly or indirectly.

99.     No Defendant paid any value for any Note encumbering the Property.

100.    No Defendant acquired in good faith any Note encumbering the Property.

### THE BREAK IN CHAIN OF TITLE

101.    There is no chain of title from Plaintiff to any Defendant.

### SECTION 22 WAS NOT COMPLIED WITH

102. Defendants failed to comply with any of the conditions precedent set forth in paragraph 22 of the Second Deed.

103. The purported Trustee has never been informed of the existence of the Second Deed.

### SERVICING VIOLATIONS

104. The purported servicer, NEWPORT BEACH HOLDINGS, LLC, did not credit all payments to Plaintiff's account.

105.    The authenticity of, and authority to make, each signature on any purported Note is hereby specifically denied.

### THE SUBSTITUTION OF TRUSTEE

106. On 9/09/2016, SDS recorded as 23426665 a SUBSTITUTION OF TRUSTEE purportedly signed on 8/31/2016 by Don A. Madden, Jr as unspecified officer, employee or agent of NEWPORT BEACH HOLDINGS, LLC and purportedly notarized on 8/31/2016 in Orange County, California by Alida M. Rice.

ADVERSARY COMPLAINT                                                          12

107. The SUBSTITUTION OF TRUSTEE states:

NOW THEREFORE, NEWPORT BEACH HOLDINGS, LLC hereby substitutes Special Default Services, Inc., whose address is 17100 Gillette Ave, Irvine, CA 92614, as Trustee under said Deed of Trust.

108. On its face, the SUBSTITUTION OF TRUSTEE was signed by Don A. Madden, Jr. at most in his individual capacity, and NOT as an officer, employee or agent of NEWPORT BEACH HOLDINGS, LLC.

109. Special Default Services, Inc. was not notified that it was named as Trustee and therefore could not exercise its powers and had no powers and was not in in any practical sense a Trustee.

**Signer**

110. Don A. Madden, Jr. is a founder of TRINITY FINANCIAL SERVICES, LLC.

111. Don A. Madden, Jr was never an officer, employee or agent of NEWPORT BEACH HOLDINGS, LLC.

112. Don A. Madden, Jr failed to verify the chain of title before signing the SUBSTITUTION OF TRUSTEE.

113. Don A. Madden, Jr signed the SUBSTITUTION OF TRUSTEE without review of any information or documentation.

114. On 8/31/2016, and at all times, Don A. Madden, Jr was not authorized to sign the SUBSTITUTION OF TRUSTEE.

115. The SUBSTITUTION OF TRUSTEE was not signed by a duly authorized corporate officer.

116. There is no corporate resolution or other document appointing Don A. Madden, Jr

ADVERSARY COMPLAINT                                                                 13

as an officer, employee or agent of NEWPORT BEACH HOLDINGS, LLC.

117.    There is no corporate resolution or other document directly or indirectly granting authority to Don A. Madden, Jr to sign the SUBSTITUTION OF TRUSTEE.

118.    There was never any decision made by the Board of Directors of NEWPORT BEACH HOLDINGS, LLC directly or indirectly granting authority to Don A. Madden, Jr to sign the SUBSTITUTION OF TRUSTEE.

119.    Beyond the signing of Deeds, Don A. Madden, Jr has no powers, authority or duties as an officer, employee or agent of NEWPORT BEACH HOLDINGS, LLC.

120.    In the alternative and without waiving the foregoing, Don A. Madden, Jr did not sign the SUBSTITUTION OF TRUSTEE; someone else did using that name.

**Notary**

121. The SUBSTITUTION OF TRUSTEE was purportedly notarized on 8/31/2016 in Orange County, California by Alida M. Rice.

122. Alida M. Rice was not a notary of California.

123. Don A. Madden, Jr did not sign in the presence of Alida M. Rice.

124. Don A. Madden, Jr did not read the SUBSTITUTION OF TRUSTEE and was not aware of its contents when signing it.

125. Don A. Madden, Jr was not personally known to Alida M. Rice and did not produce any identification for Alida M. Rice.

126. The log book of Alida M. Rice will show that the SUBSTITUTION OF TRUSTEE was not signed nor notarized on 8/31/2016, nor on any other date.

**Jurat**

ADVERSARY COMPLAINT                                                                14

127. The SUBSTITUTION OF TRUSTEE states:

On August 31, 2016, before me, Alida M. Rice, Notary Public, personally appeared Don A. Madden, Jr., who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of CALIFORNIA that the foregoing paragraph is true and correct.

128. The jurat of the SUBSTITUTION OF TRUSTEE does not comply with California law.

### THE NOTICE OF DEFAULT

129. On 9/09/2016, SDS recorded as 23426666 a NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST ("NOD") with Trustee Sale CA01000170-16, purportedly signed by Lisa Rohrbacker as Trustee Sales Officer of "Special Default Service, Inc. as Duly Appointed Successor Trustee."

130. The NOD states:

NOTICE IS HEREBY GIVEN THAT: Special Default Services, Inc. is the original Trustee. duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated as of January 9, 2007, ...

131. Special Default Services, Inc. was not the original Trustee under any Deed of Trust encumbering the Property.

132. Special Default Services, Inc. was not the duly appointed Substituted Trustee under any Deed of Trust encumbering the Property.

133. Special Default Services, Inc. was not acting as Agent for the Trustee or Beneficiary under any Deed of Trust encumbering the Property.

ADVERSARY COMPLAINT

15

## Signer

134. Lisa Rohrbacker was never Trustee Sales Officer of SDS.

135. Lisa Rohrbacker failed to verify the chain of title before signing the NOD.

136. Lisa Rohrbacker signed the NOD without review of any information or documentation.

137. On 9/09/2016, and at all times, Lisa Rohrbacker was not authorized to sign the NOD.

138. The NOD was not signed by a duly authorized corporate officer.

139. There is no corporate resolution or other document appointing Lisa Rohrbacker as Trustee Sales Officer of SDS.

140. There is no corporate resolution or other document directly or indirectly granting authority to Lisa Rohrbacker to sign the NOD.

141. There was never any decision made by the Board of Directors of SDS directly or indirectly granting authority to Lisa Rohrbacker to sign the NOD.

142. Beyond the signing of NOD's, Lisa Rohrbacker has no powers, authority or duties as a Trustee Sales Officer of SDS.

143. In the alternative and without waiving the foregoing, Lisa Rohrbacker did not sign the NOD; someone else did using that name.

### THE VIOLATIONS OF CAL.CIV.CODE §2924

144. The sale proceedings were postponed for periods totaling more than 365 days, and no new notice of sale was given as required by Cal.Civ.Code § 2924f, in violation of § 2924g(c)(2).

145. The notice of each postponement and the reason therefor were not given by public

ADVERSARY COMPLAINT

Case: 18-05062   Doc# 7   Filed: 12/07/18   Entered: 12/07/18 09:09:09   Page 16 of 32

declaration by the trustee at the time and place last appointed for sale, in violation of § 2924g(d).

146. Attached to the NOD is a CALIFORNIA DECLARATION OF COMPLIANCE dated 8/31/2016.

147. The CALIFORNIA DECLARATION OF COMPLIANCE states:

No contact was made with the Borrower pursuant to Civil Code § 2923.55 because the above-referenced loan is not secured by a first lien mortgage or deed of trust that secures a loan described in Civil Code § 2924.15(a).[3]

148. Plaintiff has never surrendered the secured property.

149. Plaintiff has never sent any letter confirming any such surrender.\

150. Plaintiff has never delivered the keys to the Property to anyone.

151. Plaintiff has never contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries.

152. As of 8/31/2016, Plaintiff did not have a case open under Chapter 13 of Title 11 of the

ADVERSARY COMPLAINT

United States Code.

153. Plaintiff never filed a case under Chapter 13 of Title 11 of the United States Code before 1/31/2017.

154. The CALIFORNIA DECLARATION OF COMPLIANCE was purportedly signed on 8/31/2016 by Don A. Madden, Jr. as unspecified officer, employee or agent of NEWPORT BEACH HOLDINGS, LLC.

155. Don A. Madden, Jr was never an officer, employee or agent of NEWPORT BEACH HOLDINGS, LLC.

156. Don A. Madden, Jr signed the CALIFORNIA DECLARATION OF COMPLIANCE without review of any information or documentation.

### THE VIOLATIONS OF CAL.CIV.CODE §2923.3 AND §2923.5

157. No one ever provided to Plaintiff any of the information required by Cal.Civ.Code §2923.3.

---

[3] Civil Code § 2924.15(a) states: "Unless otherwise provided, paragraph (5) of subdivision (a) of Section 2924, and Sections 2923.5, 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, and 2924.18 shall apply only to first lien mortgages or deeds of trust that are secured by owner-occupied residential real property containing no more than four dwelling units. For these purposes, owner-occupied means that the property is the principal residence of the borrower and is security for a loan made for personal, family, or household purposes."
Civil Code § 2923.55(c) states: "A notice of default recorded pursuant to Section 2924 shall include a declaration that the mortgage servicer has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required because the individual did not meet the definition of borrower pursuant to subdivision (c) of Section 2920.5."
Civil Code § 2920.5 states: "(c)(1) Unless otherwise provided and for purposes of Sections 2923.4 , 2923.5 , 2923.55 , 2923.6 , 2923.7 , 2924.9 , 2924.10 , 2924.11 , 2924.18 , and 2924.19 , "borrower" means any natural person who is a mortgagor or trustor and who is potentially eligible for any federal, state, or proprietary foreclosure prevention alternative program offered by, or through, his or her mortgage servicer.
(2) For purposes of the sections listed in paragraph (1), "borrower" shall not include any of the following:
(A) An individual who has surrendered the secured property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary, or authorized agent.
(B) An individual who has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries.

158. No one contacted Plaintiff before the Notice of Default was filed.

159. No one ever contacted Plaintiff for the purpose of exploring options to avoid foreclosure.[4]

160. No one ever discussed foreclosure alternatives with Plaintiff.

161. No one ever provided Plaintiff with a single point of contact.

162. Plaintiff was never served with the Notice of Default.

163. No one contacted Plaintiff before the Notice of Default was filed.

164. No one ever provided Plaintiff with the amount owed.

165. No one ever provided Plaintiff with the date by which the Plaintiff could pay off the alleged debt to avoid foreclosure.

### THE CORPORATE ASSIGNMENT OF DEED OF TRUST

166. On 9/12/2018, NEWPORT BEACH HOLDINGS, LLC recorded as 24022209 a CORPORATE ASSIGNMENT OF DEED OF TRUST ("Corporate Assignment"), dated 8/24/2018 and purportedly signed on 8/24/2018 by Sharon Mitchell as Assistant Vice President of NEWPORT BEACH HOLDINGS, LLC and purportedly notarized on 8/24/2018 in Stone County, Missouri by Jessica Brown.

167. The Corporate Assignment states:

For Value Received, NEWPORT BEACH HOLDINGS, LLC, whose address is

---

(C) An individual who has filed a case under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code and the bankruptcy court has not entered an order closing or dismissing the bankruptcy case, or granting relief from a stay of foreclosure."

[4] Civil Code § 2923.5 requires that, 30 days before a notice of default is filed, the mortgagee, beneficiary, or authorized agent "shall contact the buyer in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." See Cal. Civ. Code. § 2923.5; Cal. Civ. Code. § 2923.5(a); Argueta v. J.P. Morgan Chase, 787 F.Supp.2d 1099, 1107,(E.D.Cal. 2011); Paik v. Wells Fargo Bank, N.A., 2011 WL 109482, at *3 (N.D.Cal. Jan. 13, 2011); Mabry v. Superior Ct., 185 Cal.App.4th 208, 220 & n.6 (2010). The remedy for a violation of § 2923.5 is postponement of the foreclosure sale until there has been compliance with the statute. Argueta, 787 F.Supp. At 1107.

ADVERSARY COMPLAINT

2618 SAN MIGUEL DRIVE, SUITE 319, NEWPORT BEACH, CA, 92660 (herein "Assignor") hereby grant, sell, assign, transfer and convey to Trinity Financial Services, LLC, whose address is 2618 SAN MIGUEL DR., SUITE 303, NEWPORT BEACH, CA, 92660 (herein "Assignee") all interest under that certain Deed of Trust Dated: 1/9/2007, in the amount of $131,000.00, executed by CECILIA MANGAOANG, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION, ITS SUCCESSORS AND ASSIGNS and Recorded: 1/18/2007, Document#: 19268026 in SANTA CLARA County, State of California and all rights accrued or to accrue under said Deed of Trust.

168.    There was no "Value Received." Trinity Financial Services, LLC did not pay any consideration to NEWPORT BEACH HOLDINGS, LLC for the Corporate Assignment.

169. The Corporate Assignment does not state "together with the Note."

170. No Note was assigned, negotiated, given, bargained, transferred or conveyed together with the Corporate Assignment.

**Signer**

171. Sharon Mitchell was never Assistant Vice President of NEWPORT BEACH HOLDINGS, LLC.

172. Sharon Mitchell failed to verify the chain of title before signing the CORPORATE ASSIGNMENT OF DEED OF TRUST.

173.    Sharon Mitchell signed the CORPORATE ASSIGNMENT OF DEED OF TRUST without review of any information or documentation.

174.    On 8/24/2018, and at all times, Sharon Mitchell was not authorized to sign the CORPORATE ASSIGNMENT OF DEED OF TRUST.

175.    The CORPORATE ASSIGNMENT OF DEED OF TRUST was not signed by a duly authorized corporate officer.

ADVERSARY COMPLAINT                                                              20

176. There is no corporate resolution or other document appointing Sharon Mitchell as Assistant Vice President of NEWPORT BEACH HOLDINGS, LLC.

177. There is no corporate resolution or other document directly or indirectly granting authority to Sharon Mitchell to sign the CORPORATE ASSIGNMENT OF DEED OF TRUST.

178. There was never any decision made by the Board of Directors of NEWPORT BEACH HOLDINGS, LLC directly or indirectly granting authority to Sharon Mitchell to sign the CORPORATE ASSIGNMENT OF DEED OF TRUST.

179. Beyond the signing of Deeds, Sharon Mitchell has no powers, authority or duties as a Assistant Vice President of NEWPORT BEACH HOLDINGS, LLC.

180. In the alternative and without waiving the foregoing, Sharon Mitchell did not sign the CORPORATE ASSIGNMENT OF DEED OF TRUST; someone else did using that name.

**Notary**

181. The CORPORATE ASSIGNMENT OF DEED OF TRUST was purportedly notarized on 8/24/2018 in Stone County, Missouri by Jessica Brown.

182. Jessica Brown was not a notary of Missouri.

183. Sharon Mitchell did not sign in the presence of Jessica Brown.

184. Sharon Mitchell did not read the CORPORATE ASSIGNMENT OF DEED OF TRUST and was not aware of its contents when signing it.

185. Sharon Mitchell was not personally known to Jessica Brown and did not produce any identification for Jessica Brown.

186. The log book of Jessica Brown will show that the CORPORATE ASSIGNMENT OF DEED OF TRUST was not signed nor notarized on 8/24/2018, nor on any other date.

ADVERSARY COMPLAINT

21

**Jurat**

187. The CORPORATE ASSIGNMENT OF DEED OF TRUST states:

On August 24, 2018, before me, Jessica Brown, a Notary Public in and for STONE County, in the State of MISSOURI, personally appeared SHARON MITCHELL, ASSISTANT VICE PRESIDENT, NEWPORT BEACH HOLDINGS, LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

188. The jurat of the CORPORATE ASSIGNMENT OF DEED OF TRUST does not comply with Missouri law.

**Void**

189. The CORPORATE ASSIGNMENT OF DEED OF TRUST is void as a matter of law because:

190. (a) Sharon Mitchell lacked any authority to sign the Corporate Assignment on August 24, 2018, and

191. (b) NEWPORT BEACH HOLDINGS, LLC was not in possession of the Note and was not a "person entitled to enforce the Note" on August 24, 2018, nor at any time, and

192. (c) TRINITY FINANCIAL SERVICES, LLC paid no consideration for the Note, was not in possession of the Note, and was not a "person entitled to enforce the Note" on August 24, 2018, nor at any time, and

193. (d) NEWPORT BEACH HOLDINGS, LLC lacked any authority to create the Corporate Assignment on August 24, 2018, and

194. (e) NEWPORT BEACH HOLDINGS, LLC lacked any authority to record the Corporate Assignment in Stone County, Missouri on 9/12/2018, rendering the Corporate

Assignment void as a matter of law.

195. Plaintiff is entitled to entry of judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring the purported CORPORATE ASSIGNMENT OF DEED OF TRUST void.

### *THE NOTICE OF TRUSTEE'S SALE*

196. On 09/06/2018, SDS recorded as 24018268 a NOTICE OF TRUSTEE'S SALE, dated 9-5-2018 and purportedly signed by Lisa Welch as Trustee Sales Officer of "Special Default Service, Inc. as Duly Appointed Successor Trustee."

197. SDS is not a "Duly Appointed Successor Trustee" because, on its face, the SUBSTITUTION OF TRUSTEE was signed by Don A. Madden, Jr. at most in his individual capacity, and NOT as an officer, employee or agent of NEWPORT BEACH HOLDINGS, LLC., and for other reasons as discussed above.

### *THE SALE*

198. On 11/15/2018, SDS recorded as 24064356 a TRUSTEE'S DEED UPON SALE ("Trustee's Deed"), dated 11/8/2018 and purportedly signed by Lisa Welch as Trustee Sales Officer of "Special Default Service, Inc. as Duly Appointed Successor Trustee" and purportedly notarized on 11/8/2018 in Orange County, California by Bernardo Sotelo-Hernandez.

#### **Signer**

199. Lisa Welch was never Trustee Sales Officer of SDS.

200. Lisa Welch failed to verify the chain of title before signing the TRUSTEE'S DEED UPON SALE.

201. Lisa Welch signed the TRUSTEE'S DEED UPON SALE without review of any information or documentation.

ADVERSARY COMPLAINT                                          23

202. On 11/8/2018, and at all times, Lisa Welch was not authorized to sign the TRUSTEE'S DEED UPON SALE recorded as 24064356.

203. The TRUSTEE'S DEED UPON SALE was not signed by a duly authorized corporate officer.

204. There is no corporate resolution or other document appointing Lisa Welch as Trustee Sales Officer of SDS.

205. There is no corporate resolution or other document directly or indirectly granting authority to Lisa Welch to sign the TRUSTEE'S DEED UPON SALE recorded as 24064356.

206. There was never any decision made by the Board of Directors of SDS directly or indirectly granting authority to Lisa Welch to sign the TRUSTEE'S DEED UPON SALE recorded as 24064356.

207. Beyond the signing of Deeds, Lisa Welch has no powers, authority or duties as a Trustee Sales Officer of SDS.

208. In the alternative and without waiving the foregoing, Lisa Welch did not sign the TRUSTEE'S DEED UPON SALE; someone else did using that name.

### Notary

209. The TRUSTEE'S DEED UPON SALE was purportedly notarized on 11/8/2018 in Orange County, California by Bernardo Sotelo-Hernandez

210. Bernardo Sotelo-Hernandez was not a notary of California.

211. Lisa Welch did not sign in the presence of Bernardo Sotelo-Hernandez.

212. Lisa Welch did not read the TRUSTEE'S DEED UPON SALE and was not aware of its contents when signing it.

213. Lisa Welch was not personally known to Bernardo Sotelo-Hernandez and did not produce any identification for Bernardo Sotelo-Hernandez.

214. The log book of Bernardo Sotelo-Hernandez will show that the TRUSTEE'S DEED UPON SALE was not signed nor notarized on 11/8/2018, nor on any other date.

### Jurat

215. The TRUSTEE'S DEED UPON SALE states:

On 11-8-18 before me, Bernardo Sotelo-Hernandez, a Notary Public, personally appeared LISA WELCH, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of CALIFORNIA that the foregoing paragraph is true and correct.

216. The jurat of the TRUSTEE'S DEED UPON SALE does not comply with California law.

217. The Trustee's Deed states:

WHEN RECORDED MAIL DEED AND TAX STATEMENT TO:
TRINITY FINANCIAL SERVICES, LLC
2618 SAN MIGUEL DRIVE
SUITE 303
NEWPORT BEACH, CA 92660

218. The Trustee's Deed states:

The undersigned Grantor, under penalty of perjury, declares:
EXEMPT PER R&T CODE SECTION 11926
1) The Grantee herein was the foreclosing beneficiary.
2) The amount of the unpaid debt together with costs was: $300,408.97
3) The amount paid by the grantee at the trustee sale was: $300,408.97
4) The documentary transfer tax is: $0.00
5) Said property is in the city of: SAN JOSE
6) A.P.N. 092-11-091
and Special Default Services, Inc., herein called "Trustee", as Trustee (or as Successor Trustee) of the Deed of Trust hereinafter described, hereby grants and

ADVERSARY COMPLAINT

25

conveys, but without covenant or warranty, express or implied, to TRINITY FINANCIAL SERVICES, LLC, herein called "Grantee", the real property in the County of Santa Clara, State of California, described as follows: SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

219. The reason for the exemption was not noted on the Trustee's Deed, in violation of California law.

220. Special Default Services, Inc. was not a lawful Trustee on 11/8/2018.

221. Special Default Services, Inc. was never a lawful Trustee.

222. The Deed states:

Pursuant to the Notice of Trustee's Sale, the above described property was sold by Trustee (or Successor Trustee) at public auction on **November 5, 2018** at the place specified in said Notice, to Grantee who was the highest bidder therefore, for $300,408.97 in lawful money of the United States, which has been paid, or by credit bid if the Grantee was the beneficiary of said Deed of Trust at the time of said public auction.

223. The public auction on November 5, 2018 was not lawfully conducted.

224. The Trustee's Deed is invalid because the sale date (11/5/2018) occurred more than one year after the Notice of Default (9/09/2016).

*TENDER*

225. Each of the Defendants is not a mortgagee whatsoever, and is otherwise making a completely unsubstantiated claim to the property. [5]

## FIRST CAUSE OF ACTION
### (Quiet Title)
### (Against All Defendants)

226. The allegations under "Facts" are re-alleged as if fully set forth.

ADVERSARY COMPLAINT

26

Case: 18-05062    Doc# 7    Filed: 12/07/18    Entered: 12/07/18 09:09:09    Page 26 of 32

227. All Defendants claimed, and continue to claim, an interest and estate in the real property at issue by recording the NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST.

228. All Defendants claimed, and continue to claim, an interest and estate in the real property at issue by recording the TRUSTEE'S DEED UPON SALE.

229. At all times relevant to this Complaint, Plaintiff was and is in possession and has been in continuous possession of the real property at issue, against all the world, and has paid all lawful property taxes thereon.

230. The real property at issue is the homestead and domicile of Plaintiff.

231. Plaintiff has superior and legal title to, and other interest in, the real property at issue.

232. Plaintiff's title comes from a Deed.

233. Any and all loans encumbering the Property have been paid or otherwise discharged.

234. At all times relevant to this Complaint, Plaintiff was and is the owner of the real property at issue and entitled to such ownership and use without interference by the Chase Defendants.

235. Defendants' claims to any right, title or interest in the property are false and without merit.

236. As a result of the above-described wrongful actions, Plaintiff has suffered damages

---

[5] Tender is not required where the Complaint alleges that the defendant is not a mortgagee "whatsoever." See [48] Order in Case 1:11-cv-00714-JMS-BMK (Seabright, J). See also Klohs et al. v. Wells Fargo Bank, N.A., Civ. No. 12-00274 JMS-KSC, Order Granting Defendant Wells Fargo Bank N.A.'s Motion to Dismiss (Seabright, J.) (citing Amina v. BONYM (D. Haw. Aug. 9, 2012)).

ADVERSARY COMPLAINT

27

in an amount to be determined at trial, for which the above-named parties are jointly and severally liable.

237.    Plaintiff seeks a decree quieting title to the real property at issue in Plaintiff as of the date the Complaint was filed, and such further equitable relief as the Court deems proper.

## SECOND CAUSE OF ACTION
### (Fair Debt Collection Practices Act, FDCPA (15 U.S.C. § 1692-1692o))
### (Against Defendant Newport Beach, Special Default Services)

238.    The allegations under "Facts" are re-alleged as if fully set forth.

239.    All Defendants are "debt collector[s]" as defined by 15 U.S.C. § 1692a (6) and other definitional requirements and devote a substantial portion of their business to the collection of consumer debts, such as the alleged debt at issue in this litigation.

240.    The debt alleged by Defendants, at issue in this litigation, is covered as a debt as defined 15 U.S.C. 1692a (5) and 15 U.S.C. § 15 USC 1692a [FDCPA Section 803], since it was incurred for the personal, family or household purposes of the Plaintiff and the filing of documents under purported authority, which parties did not have, to falsely represent that it had interests for the personal, family or household purposes of the Plaintiff which violated 15 U.S.C. § 807 (10), 808 (6)(A) and 812.

241.    The "debt" was never acquired by Newport Beach.

242.    Newport Beach never paid consideration.

243.    There was no "true sale" to Newport Beach.

244.    Newport Beach attempted to collect a debt not owed to it, in violation of the FDCPA.[6]

---

[6] "This bill also protects people who do not owe money at all. In the collector's zeal, collection efforts are often aimed
ADVERSARY COMPLAINT                                                                          28

245. These acts as well as the attempted foreclosure are wrongful, intentional, reckless, willful and wanton, negligent, deceptive, and predatory. Defendants knew they should not falsify documents particularly official documents meant to prove a material fact such as secured creditor status. The perjured documents violate 15 U.S.C. §1692e(10) and 15 U.S.C. §1692f.

246. As a result of the aforesaid FDCPA violations, Plaintiff has been subjected to false and illegal collection activities, and have therefore been harmed due to the slander to Plaintiff's credit and emotional/physical health issues proximately caused by these defendants.

247. As a result of the above-described wrongful actions, Plaintiff has suffered damages in an amount to be determined at trial, for which the above-named parties are jointly and severally liable.

## THIRD CAUSE OF ACTION
### (Cancellation of Instrument(s))
### (Against Defendants SPECIAL DEFAULT SERVICES, INC., NEWPORT BEACH HOLDINGS, LLC )

248. The allegations under "Facts" are re-alleged as if fully set forth.

249. The recorded instruments 19268025 (First Deed) and 19268026 (Second Deed) are void because they do not bear Plaintiff's signature.

250. The First Deed and the Second Deed are void because the loans were made in violation of the Federal Housing Act because the Property is not located within any place that has been ceded to the Federal Government by act of the California Legislature.

### MERS

251. AIDAN WEST FINANCIAL GROUP has never been a member of MERS.

---

at the wrong person either because of mistaken identity or mistaken facts." House Report 95-131, 95th Cong., 1st Sess., p. 8. Accord, Senate Report No. 95-382, p. 4, reprinted at 1997 USCCAN 1695, 1699.
ADVERSARY COMPLAINT

252. AIDAN WEST FINANCIAL GROUP has never been a nominee of MERS.

253. Therefore, the First Deed lacks a beneficiary. Therefore, the First Deed is void and should be cancelled.

254. "AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION, organized and existing under the laws of the State of CALIFORNIA" has never been a member of MERS.

255. "AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION, organized and existing under the laws of the State of CALIFORNIA" has never been a nominee of MERS.

256. Therefore, the Second Deed lacks a beneficiary. Therefore, the Second Deed is void and should be cancelled.

257. The recorded instruments 24022209 (CORPORATE ASSIGNMENT OF DEED OF TRUST) and 23426666 (NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST) and 24064356 (TRUSTEE'S DEED UPON SALE) are void because they were forged and fabricated, or in the alternative because the signers lacked authorization to sign, and because the signers had not read the documents and did not know their contents, and because they were not properly notarized nor acknowledged, and because Plaintiff did not sign the documents that Defendants allege, and because Trinity never acquired any Note encumbering the Property, and because SDS was never properly appointed or substituted as Successor Trustee, and for fraud because the transaction was not as it was represented to be (e.g. the "Lender" did not lend money or credit), and for all reasons discussed above, and for other reasons yet to be discovered.

258. The recording of void instruments (namely, 19268025 (First Deed) and 19268026

ADVERSARY COMPLAINT

Case: 18-05062   Doc# 7   Filed: 12/07/18   Entered: 12/07/18 09:09:09   Page 30 of 32

(Second Deed) and 24022209 (CORPORATE ASSIGNMENT OF DEED OF TRUST) and 23426666 (NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST) and 24064356 (TRUSTEE'S DEED UPON SALE)) has damaged Plaintiff in an amount to be determined at trial, for which the above-named parties are jointly and severally liable. Plaintiff requests the Court cancel those recorded instruments.

**FOURTH CAUSE OF ACTION**
**(Wrongful Foreclosure)**
**(Against Defendants SPECIAL DEFAULT SERVICES, INC., NEWPORT BEACH HOLDINGS, LLC )**

259.     The allegations under "Facts" are re-alleged as if fully set forth.

260.     Special Default Services, Inc. caused a fraudulent and illegal sale of real property purportedly using the power of sale in the Second Deed. It was fraudulent and illegal because:

261.     (a) Special Default Services, Inc. was never a lawful Trustee.

262.     (b) The Second Deed does not bear Plaintiff's signature.

263.     (c) The Second Deed states that MERS acts as nominee for "Lender" AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION, organized and existing under the laws of the State of CALIFORNIA. However, AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION, organized and existing under the laws of the State of CALIFORNIA has never been either a member or a nominee of MERS.

264.     Plaintiff was harmed by the sale. Real estate is unique, and Plaintiff no longer owns her home.

265.     Plaintiff had tendered the amount of what they owed, since Plaintiff owed nothing.

266.     In the alternative and without waiving the foregoing, Plaintiff was excused from tendering because each of the Defendants is not a mortgagee whatsoever, and is otherwise making

ADVERSARY COMPLAINT                                                                                     31

a completely unsubstantiated claim to the property. See footnote (4) above.

267.    As a result of the above-described wrongful actions, Plaintiff has suffered damages in an amount to be determined at trial, for which the above-named parties are jointly and severally liable, and the Court should set aside the sale.

## PRAYER FOR RELIEF

268.    WHEREFORE, Plaintiff demand judgment against Defendants and their predecessors in interest as follows:

269.    An Order declaring Plaintiff to be owner of and entitled to possession of the real property at issue free of any claim, estate, title, lien or interest of Defendants or those claiming under Defendants, and quieting title in such property in Plaintiff; a Judgment for treble damages; cancellation of the above-described recorded instruments; an injunction enjoining Defendants from reporting negative information to any credit bureau and from evicting.

270.    Award to Plaintiff his reasonable costs, disbursements and prejudgment interest.

271.    An accounting from each Defendant of all funds handled in any way concerning the mortgage loan.

272.    Such other relief as the court may deem proper.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct pursuant to 28 U.S.C. 1746. Executed on this seventh day of December, 2018.

/s/ Cecilia Mangaoang
Cecilia Mangaoang
2901 Capewood Lane
San Jose, CA 95132-1108
(408) 876-9950

ADVERSARY COMPLAINT                                                         32