Cecilia Mangaoang
2901 Capewood Lane
San Jose, CA 95132-1108
(408) 876-9950



FILED

APR 1 1 2019

CLERK
United States Bankruptcy Court
San Jose, California

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:<br>    Cecilia Mangaoang,<br><br>        Debtor.<br>-------------------------------------------------------- | ) Adv. No. 18-05062<br>)<br>) Bk. No. 18-52245 MEH<br>)<br>) (Related Case Bk. #5:2017bk50208-MEH) |
| Cecilia Mangaoang,<br><br>        Plaintiff,<br><br>vs.<br><br>SPECIAL DEFAULT SERVICES, INC.;<br><br>TRINITY FINANCIAL SERVICES, LLC;<br><br>NEWPORT BEACH HOLDINGS, LLC;<br><br>JOHN G. DOWNING;<br><br>Does # 1-10, inclusive,<br><br>        Defendants. | )<br>)<br>) **VERIFIED SECOND AMENDED**<br>) **ADVERSARY COMPLAINT**<br>)<br>) **Quiet Title,**<br>)<br>) **FDCPA (15 U.S.C. § 1692-1692o),**<br>)<br>) **Cancellation of Instrument,**<br>)<br>) **Wrongful Foreclosure,**<br>)<br>) **Avoidance of Wholly Unsecured**<br>) **Lien,**<br>)<br>) **Negligence**<br>)<br>) **[ Injunctive Relief Requested ]** |

## PRELIMINARY NOTES

1. **Plaintiff requests an immediate injunction, and/or reinstatement of the stay,** enjoining the Superior Court of California, County of Santa Clara, from continuing with eviction (forcible entry / unlawful detainer) lawsuit #18CV339119, and enjoining Trinity from prosecuting such case, and from reporting negative information to any credit bureau pending

1

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

resolution of this case. **An eviction action should not have been filed while a title dispute is pending.** This case was filed on 12/4/2018 and the eviction action was filed on 12/7/2018.

2. Changes and new material are underlined. The Fifth Cause of Action is a request to avoid the wholly unsecured Second Lien. The Sixth Cause of Action is a request to reopen the previous case and do the "lien stripping" and "cram down" that ought to have been done, or in the alternative a request for relief from the attorney whose negligence (to do the lien stripping and cramdown) allowed the foreclosure to occur. Such requests should be ruled on after the claim for Wrongful Foreclosure is ruled on.

3. The Fourth Cause of Action for Wrongful Foreclosure is now also alleged against TRINITY FINANCIAL SERVICES, LLC.

4. In the related Bankruptcy case #5:2017bk50208, the Court issued its Order and Notice of Dismissal for Failure to Comply. However, no Judgment of Dismissal was entered. Then on September 6, 2018, a Notice of Sale was recorded, and on November 5, 2018, the foreclosure sale was held, even though no Judgment of Dismissal had been entered. Therefore, the foreclosure sale is unlawful, invalid and void.

### *SEEKING LIEN AVOIDANCE OF WHOLLY UNSECURED LIEN*

5. This adversary proceeding arises out of Plaintiff's Chapter 13 case now pending before this Court. This Court has jurisdiction to consider the matters herein pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C § 506 and 1322. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B), (K), and (O).

6. Prior to the filing of this bankruptcy case, Plaintiff allegedly executed a second lien in favor of Newport Beach, or Defendant Trinity's predecessor, evidencing a loan by Defendant

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

2

Newport Beach.

7. In the related Bankruptcy case #5:2017bk50208, on the date of filing of Plaintiff's Chapter 13 Petition namely 1/31/2017, Plaintiff was allegedly indebted to Newport Beach or its successors and/or assigns under such instrument in the approximate sum of $273,157.28 for the second lien, according to the Proof of Claim filed by Newport Beach Holdings, Inc.

8. On the date of filing of Plaintiff's Chapter 13 Petition, 10/4/2018, Plaintiff was allegedly indebted to Newport Beach or its successors and/or assigns under such instrument in the approximate sum of $294,260.19 for the second lien. See page 18 of [1] Schedule D in this bankruptcy case #18-52245 MEH. (Newport Beach did not file a Proof of Claim in the bankruptcy case #18-52245 MEH.) [1]

9. In the related Bankruptcy case #5:2017bk50208, on the date of filing of Plaintiff's Chapter 13 Petition, namely 1/31/2017, the value of Plaintiff's real property described above was $700,000, see [29-1] Mangaoang Declaration, [29-2] Supplemental Declaration from Bankruptcy Case #17-50208-SLJ. On that date, the debt owing to senior lienholder Wilmington was approximately $796,066.53. See [2] Proof of Claim from Bankruptcy Case #17-50208-SLJ filed by Wilmington on 6/19/2017. At the time of filing of that bankruptcy case, the second lien was wholly unsecured and was eligible for stripping, however Plaintiff's attorney Mr. Downing failed to move to strip the second lien. Had he done so, the Second Lien holder would not have been able to foreclose, and Plaintiff would still own her home.

10. On the date of filing of Plaintiff's Chapter 13 Petition, 10/4/2018, the value of Plaintiff's real property described above was $800,000.00. See page 2 of Schedule D, page 19 of Doc. [1]

---

[1] Mr. Downing filed a [22] Request for Valuation of Security in which he inadvertently transposed the 4 and the 9, giving a figure of $249,260.19 on page 4 of 7 of that document.

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

3

from Bankruptcy Case #18-52245-MEH. On that date, the debt owing to senior lienholder Wilmington was approximately $820,574.69. See [2] Proof of Claim from Bankruptcy Case #18-52245-MEH.

11. In the instant case, the [30] SECURED CREDITOR NEWPORT BEACH HOLDINGS, LLC'S NOTICE OF FILING OF BROKER'S PRICE OPINION states (but not under oath) that a Broker's Price Opinion (but not an appraisal) is higher than that $800,000 figure; such unsworn opinion should be disregarded as compared to the [29-1], [29-2] Declarations (from case 50208) and the [1] Schedule D which were referred to above. Defendant Trinity had an opportunity to rebut Plaintiff's sworn materials, and did not do so.

12. The debt owing to senior lienholder Wilmington at ($820,574.69) exceeds the value of Plaintiff's real property ($800,000.00). So there's nothing left for the second lienholder.

13. No equity in Plaintiff's real property exists to which Defendant's lien can attach. Therefore, pursuant 11 U.S.C. §§ 506 and 1322, and in re Zimmer, 313 F.3d 1220 (9th Cir. 2002), Plaintiffs are entitled to "strip off" the lien held by Defendant so that such lien becomes voided and no longer remains a lien against Plaintiff's real property.

14. The Second Deed does not provide for, nor allow, any removal or substitution of trustee.

15. MERS has no authority to nonjudicially foreclose under the Second Deed under its express terms. (MERS would also not qualify as one entitled to payment under §2923.5, since it does not hold the note.) The provisions of CC §2924(a)(1), allowing agents to foreclose, do not trump the requirement of CC §2923.5, that assignments must be recorded before foreclosures start. See In re Salazar, 10-17456-MM13 in the United States Bankruptcy Court, Southern District of

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

California (2011)(" US Bank [as Trustee]'s failure to record its beneficiary status before foreclosure left Salazar with equitable title to his residence."). Here, no Defendant has recorded any beneficiary status.

16. "[B]ecause MERS was never the lawful holder or assignee of the notes described and identified in the consolidation agreement, the . . . assignment of mortgage is a nullity, and MERS was without authority to assign the power to foreclose to the plaintiff. Consequently, the plaintiff failed to show that it had standing to foreclose." (Bank of New York v Silverberg, AD3d, 2011 NY Slip Op 05002 [June 7, 2011]).

17. Defendants failed to notify or initiate contact with Plaintiff to discuss available options prior to the recording of the Notice of Default in violation of California Civil Code Section 2923.5.

18. Defendants failed to provide a copy of the Notice of Default after recording it in violation of Civil Code Sections 2923.5 and 2924.

19. Defendants also failed to provide a copy of the Substitution of Trustee after it was recorded in violation of California Civil Code 2924.

20. MERS did not have authority, as 'nominee' or agent, to assign the mortgage absent a showing that it was given specific written directions by its principal. No such written directions ever existed.

21. The United States Bankruptcy Court for the Eastern District of California has issued a ruling dated May 20, 2010 in the matter of In Re: Walker, Case No. 10-21656-E-11 which found that MERS could not, as a matter of law, have transferred the note to Citibank from the original lender, Bayrock Mortgage Corp. The Court's opinion is headlined stating that MERS and Citibank are not the real parties in interest. The court found that MERS acted "only as a nominee" for

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

Bayrock under the Deed of Trust and there was no evidence that the note was transferred. The opinion also provides that "several courts have acknowledged that MERS is not the owner of the underlying note and therefore could not transfer the note, the beneficial interest in the deed of trust, or foreclose on the property secured by the deed", citing the well-known cases of In Re Vargas (California Bankruptcy Court, 396 B.R. 511 (Bankr. C.D. Cal. 2008)), Landmark v. Kesler (Kansas decision as to lack of authority of MERS, 216 P.3d 158, 166-67 (Kan. 2009)), LaSalle Bank v. Lamy (New York, 824 N.Y.S.2d 769, 2006 WL 2251721, at *1 (N.Y. Sup. Ct. Aug. 7, 2006)), and In Re Foreclosure Cases (the "Boyko" decision from Ohio Federal Court, 521 F.Supp.2d 650 (S.D.Ohio 2007)). The opinion states: "Since no evidence of MERS' ownership of the underlying note has been offered, and other courts have concluded that MERS does not own the underlying notes, this court is convinced that MERS had no interest it could transfer to Citibank. Since MERS did not own the underlying note, it could not transfer the beneficial interest of the Deed of Trust to another. Any attempt to transfer the beneficial interest of a trust deed without ownership of the underlying note is void under California law."

22. The Note and Mortgage were severed or bifurcated at the closing table with the Mortgage being recorded in the name of MERS as "nominee" for the original lender. However, the original lender never actually loaned any money to the homeowner. The original lender was never owed or paid any money under the terms of the Note. There the Mortgage sat for years in the name of an entity, MERS, for which the homeowner owed no money and which would never be beneficiary under the Note.

### *THE SECURITIZATION*

23. Around the time of the origination of the Second Loan, Aidan attempted to securitize

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

and sell the Second Loan to another entity. However, the Second Note was never effectively sold, transferred or granted to any other entity.

24. The securitization of the Loan failed due to a lack of recordation of the required assignment of the DOT from Aidan to any entity on or before the Trust's Closing Date, thus leaving Defendants without any legal or equitable interest in the mortgage. The Trust is subject to and governed by a PSA that requires that all Notes be properly endorsed, transferred, accepted, and deposited with the Trust by the Trust's Closing Date. The failure to deposit the Second Note into the Trust by the closing date is a violation of the PSA and New York trust law.

25. On November 6, 2007, Aidan's corporate entity was suspended and no longer licensed to operate in California.

26. On 7/21/2015, MERS as nominee of Aidan allegedly assigned the DOT to Newport Beach Holdings, LLC ("First Corporate Assignment").

27. On 8/24/2018, Newport Beach Holdings, LLC ("Newport Beach") allegedly assigned the DOT to Trinity Financial Services, LLC ("Second Corporate Assignment").

28. On 9/09/2016, SDS recorded a Substitution of Trustee ("SOT"), bearing the signature of Don A. Madden, Jr. at most in his individual capacity, and NOT as an officer, employee or agent of Newport Beach. Don A. Madden, Jr. was never an officer, employee or agent of Newport Beach, and was not authorized to sign the SOT. Therefore, SDS is not a valid substitute trustee.

29. On 9/09/2016, SDS recorded a Notice of Default and Election to Sell Under Deed of Trust ("NOD").

30. On 9/6/2018, Special Default Service recorded a Notice of Trustee's Sale ("NOTS").

31. On 11/15/2018, SDS recorded as 24064356 a Trustee's Deed Upon Sale ("Trustee's

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

Deed").

32. The First Corporate Assignment and the Second Corporate Assignment could not have occurred and were thus void and transferred no interest. At each step, only the entity holding the beneficial interest under the DOT (either the original lender or the assignee or agent thereof) may assign that interest, and only that entity may instruct the trustee to commence and complete a nonjudicial foreclosure. Here, since both Corporate Assignments were void, the entity holding the beneficial interest under the DOT was either the original lender (AIDAN WEST FINANCIAL GROUP) or an agent thereof, but was certainly not any of the Defendants.

33. The Second Deed does not bear Plaintiff's signature.

34. MERS could not act as nominee for non-member AIDAN WEST FINANCIAL GROUP ("Aidan West")(the "Lender"). Therefore, the Second Deed is void and could not be used as a reason to sell the Property.

35. On the date of the Corporate Assignment to Newport Beach, namely 7/21/2015, AIDAN WEST FINANCIAL GROUP had a status of "Suspended FTB" by the Franchise Tax Board.[2]

---

[2] A corporation whose powers have been suspended for non-payment of the corporate franchise tax lacks capacity to sue in California courts; and, if sued, it lacks capacity to defend.  See Revenue & Taxation Code § 23301, 23302, 23301.5, 23775.

A corporation that has been suspended due to its failure to file the biennial statement required by Corporations Code § 1502 lacks capacity to sue or defend itself.

Any person that is claiming to exercise the rights and powers of a suspended corporation which can include an attorney who appears on its behalf—is guilty of a misdemeanor. See Revenue & Taxation Code § 19719.

An attorney who knowingly represents a suspended corporation and conceals this fact from the court may be subject to sanctions.

During the period of time that a corporation is suspended for failure to pay taxes, it may not prosecute or defend an action, appeal from an adverse judgment, or seek a writ of mandate.

A suspended corporation may be sued. Service of process is perfected in the same manner as upon a corporation that is not suspended. A default judgment may be entered upon its failure to respond.  See Code of Civil Procedure §§ 416.10, 416.20; Grell v. Laci Le Beau Corp., (1999) 73 Cal.App. 4th 1300, 1306—statute of limitations not tolled for

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

36. On its face, the SUBSTITUTION OF TRUSTEE was signed by Don A. Madden, Jr. at most in his individual capacity, and NOT as an officer, employee or agent of NEWPORT BEACH HOLDINGS, LLC. Therefore, Special Default Services, Inc. was never substituted as Trustee and could not sell the Property.

37. Defendants failed to comply with any of the conditions precedent set forth in paragraph 22 of the subject (Second) Deed of Trust.

38. There were multiple violations of Cal.Civ.Code §2923.3 and §2923.5 and §2924.

39. Trinity (the purported Creditor and purchaser at the sale) purchased with a Credit Bid, yet Trinity was not the present beneficiary of the Second Deed, in violation of Cal. Civ. Code § 2924h(b).

40. Trinity and Newport Beach are not registered with the Nationwide Mortgage Licensing System and do not have a bond or a Residential Mortgage Lending Act License,[3] nor a license under the California Finance Lenders Law or California Real Estate Law.

41. At all relevant times, NEWPORT BEACH HOLDINGS, LLC had a status of "FTB FORFEITED" with the California Secretary of State.

42. Plaintiff contends that the sale was unlawful and therefore the Property still belongs to the Bankruptcy Estate, and one creditor should not be allowed to take possession of it.

**PARTIES**

*PLAINTIFF*

43. Cecilia Mangaoang is a citizen of California.

*SPECIAL DEFAULT SERVICES, INC.*

---

either party while corporate powers are suspended.

[3] This license is required for any company or person who makes or services residential mortgage loans in California.

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

44. Defendant Special Default Services, Inc. ("SDS") is a California corporation, and can be served via its Registered Agent, MARISOL NAGATA, address 17100 GILLETTE AVENUE, IRVINE CA 92614.

45. At all or some relevant times, SDS purported to act as Trustee.

46. At all or some relevant times, SDS purported to be an agent of Newport Beach.

### *TRINITY FINANCIAL SERVICES, LLC*

47. Defendant TRINITY FINANCIAL SERVICES, LLC ("Trinity") is a Wyoming limited liability corporation, with head office at 1621 CENTRAL AVE CHEYENNE WY 82001, and another office at 2618 SAN MIGUEL DRIVE, SUITE 303, NEWPORT BEACH, CA 92660, and can be served at:

> TRINITY FINANCIAL SERVICES, LLC
> c/o RICARDO OROZCO, Registered Agent
> 1220 S ST STE 150
> SACRAMENTO CA 95811

### *NEWPORT BEACH HOLDINGS, LLC*

48. Defendant NEWPORT BEACH HOLDINGS, LLC ("Newport Beach") is a Nevada corporation (E0091212011-1, NV20111113607), with offices at 2618 San Miguel Dr, Ste 319, Newport Beach, CA 92660, and can be served at:

> NEWPORT BEACH HOLDINGS, LLC
> c/o INCORP SERVICES, INC., Registered Agent
> 3773 HOWARD HUGHES PKWY STE 500S
> LAS VEGAS, NV 89169-6014

49. NEWPORT BEACH HOLDINGS, LLC has a status of "FTB FORFEITED" with the California Secretary of State.

50. At all relevant times, NEWPORT BEACH HOLDINGS, LLC had a status of "FTB

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

FORFEITED" with the California Secretary of State.

51. Newport Beach Holdings, LLC registered as California corporation #201615410070, and began existing, on 6/1/2016.

52. NEWPORT BEACH HOLDINGS, LLC claims to be the Creditor.

53. NEWPORT BEACH HOLDINGS, LLC is merely the servicer, and not the owner, of the loan.

54. NEWPORT BEACH HOLDINGS, LLC does not own any Note encumbering the Property.

55. At all relevant times, NEWPORT BEACH HOLDINGS, LLC was not registered to do business in California.

### DOES #1-10

56. The Doe defendants #1-10 have some claim to ownership or possession of evidence of purported debt allegedly secured by the Property, or conspired with the other Defendants, or defamed Plaintiff.

57. All Defendants are jointly and severally liable.

## FACTUAL ALLEGATIONS

58. All the following allegations are intended to be "without limitation" and will be supplemented by other facts to be found in discovery.

### OWNERSHIP AND POSSESSION

59. Plaintiff is the owner of, and domiciled at, the property located at 2901 Capewood Lane, San Jose, CA 95132-1108, legally described as:

**ALL OF LOT 436, AS SHOWN UPON THAT CERTAIN MAP ENTITLED, 'TRACT NO. 3465 NORTHWOOD PARK UNIT NO. 4', WHICH MAP WAS**

11

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

FILED FOR RECORD IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SANTA CLARA, STATE OF CALIFORNIA, ON JUNE 28, 1963, IN BOOK 163 OF MAPS, PAGES 22 AND 23.

EXCEPTING THEREFROM THE UNDERGROUND WATER RIGHTS WITH NO RIGHT OF SURFACE ENTRY AS CONVEYED TO SAN JOSE WATER WORKS, A CALIFORNIA CORPORATION BY INSTRUMENT RECORDED DECEMBER 10, 1963 IN BOOK 6302 OF OFFICIAL RECORDS, AT PAGE 467.

APN : 092-11-091

(hereafter "the Property").

60. The Property is located in a judicial district of California under the 1849 Constitution.

61. The Property is not located in territory owned by or subject to the exclusive legislative jurisdiction of the United States of America.

62. The Property is not located within the Federal Housing Act area where Congress has exclusive legislative jurisdiction (Art I Sec 8 Clause 17; Art 4 Sec 3 Clause 2).

63. The Property is not located within any place that has been ceded to the Federal Government by act of the California Legislature. Therefore, the purported loans were made in violation of the Federal Housing Act and the Deeds of Trust should be cancelled.

64. Plaintiff is, and has been since on or about January 18, 2007, in continuous possession of the Property.

65. Plaintiff has did not make a forcible entry into the Property.

66. Plaintiff is not unlawfully holding the possession of the Property by force.

67. Plaintiff and Defendants do not have a landlord-tenant relationship.

68. Plaintiff has never sold the Property.

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

69.     Plaintiff has never intended to irrevocably grant or convey the Property to any party.

70.     Plaintiff has never been served with any Notice of Trustee's Sale.

**THE DEED TO PLAINTIFF**

71.     On 1/18/2007, Betty C. Chen recorded with the Santa Clara County Recorder, as Document #19268023, a GRANT DEED dated 1/8/2007, conveying the Property to Plaintiff.

**THE SECOND DEED OF TRUST**

72.     On 1/18/2007, AIDAN WEST FINANCIAL GROUP recorded with the Santa Clara County Recorder, as Document #19268026, a DEED OF TRUST ("Second Deed") dated 1/9/2007.

73.     The Second Deed does not bear Plaintiff's signature.

74.     The Prepayment Rider to the Second Deed does not bear Plaintiff's signature.

75.     The Second Deed states: "THIS DEED OF TRUST IS SECOND AND SUBORDINATE TO THE FIRST DEED OF TRUST RECORDING CONCURRENTLY HEREIN."

76.     The Second Deed does not contain any definition section.

77.     The Second Deed does not provide for, nor allow, any removal or substitution of trustee.

78.     MERS has no authority to nonjudicially foreclose under the Second Deed under its express terms.  (MERS would also not qualify as one entitled to payment under §2923.5, since it does not hold the note.)  The provisions of CC §2924(a)(1), allowing agents to foreclose, do not trump the requirement of CC §2923.5, that assignments must be recorded before foreclosures start. See *In re Salazar*, 10-17456-MM13 in the United States Bankruptcy Court, Southern District of

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

13

California (2011) ("US Bank [as Trustee]'s failure to record its beneficiary status before foreclosure left Salazar with equitable title to his residence."). Here, no Defendant has recorded any beneficiary status.

79.    "[B]ecause MERS was never the lawful holder or assignee of the notes described and identified in the consolidation agreement, the . . . assignment of mortgage is a nullity, and MERS was without authority to assign the power to foreclose to the plaintiff. Consequently, the plaintiff failed to show that it had standing to foreclose." (*Bank of New York v Silverberg*, AD3d, 2011 NY Slip Op 05002 [June 7, 2011]).

80.    The Second Deed states:

THIS DEED OF TRUST is made this JANUARY 9, 2007, among the Trustor, CECILIA MANGAOANG, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY (herein "Borrower"), FIDELITY NATIONAL TITLE [address] (herein "Trustee"), and AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION, organized and existing under the laws of the State of CALIFORNIA [address] (herein "Lender").

WHEREAS, this Security Instrument is given to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), as beneficiary, which is acting solely as nominee for Lender (as hereinabove defined) and Lender's successors and assigns.

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated JANUARY 9, 2007, and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $131,000, with interest... [Note: The interest rate was never specified.]

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

Case: 18-05062   Doc# 65   Filed: 04/11/19   Entered: 04/11/19 16:59:26   Page 14 of 30

81.     The Second Deed does not contain a definitions section, however it refers to "Borrower's note dated JANUARY 9, 2007, and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $131,000, with interest…" (hereafter referred to as "Second Note")

82.     Plaintiff did not sign any Note dated JANUARY 9, 2007.

83.     Plaintiff has never signed any Note stating that Plaintiff owes AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION.

84.     Plaintiff has never signed any Note in the principal sum of $131,000.

85.     Plaintiff did not draft the Second Deed.

86.     Plaintiff does not know who drafted the Second Deed.

87.     "AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION, organized and existing under the laws of the State of CALIFORNIA" has never been a member of MERS.

88.     "AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION, organized and existing under the laws of the State of CALIFORNIA" has never been a nominee of MERS.

89.     Therefore, the Second Deed lacks a beneficiary. Therefore, the Second Deed is void and should be cancelled.

90.     As of 1/9/2007, Plaintiff was never "seised" of the Property.

91.     Plaintiff has never agreed to "defend generally the title to the Property against all claims and demands, subject to any encumbrances of record."

**THE ALLEGED LOAN**

15

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

92. Defendants claim that AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION lent money to Plaintiff.

93. Defendants claim that AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION lent credit to Plaintiff.

94. Plaintiff did not receive a loan of money from AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION.

95. Plaintiff did not receive a loan of credit from AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION.

96. Each of the Notes alleged by Defendants (hereafter "each Note") is not a negotiable instrument under UCC 3.104 because the "promise to pay" is governed by other, separate documents and is therefore not unconditional.

97. Each Note is not a negotiable instrument under UCC 3.104 because the total amount to pay includes interest which will change and therefore is not a sum certain.

98. Each Note is not a negotiable instrument under UCC 3.104 because it is not "payable on demand or at **a** definite time" because it is payable in monthly installments.

99. Any Defendants who took any Note encumbering the Property had notice of all, each and every defense(s) to it, including but not limited to: Fraud in the execution (this occurs when a person is deceived into signing a negotiable instrument believing that he is signing something other than a negotiable instrument); Material alteration; Discharge in bankruptcy; Breach of contract or breach of warranty; Lack or failure of consideration; Fraud in the inducement.

100. No Defendant was ever owner nor holder of any Note encumbering the Property.

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

101.    All Defendants' General Ledger accounting entries show that AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION did not lend money.

102.    All Defendants' General Ledger accounting entries show that AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION did not lend credit.

103.    The loan was securitized.

104.    The Pooling and Servicing Agreement, Master Servicing Agreement and Sub-Servicing Agreements will show that the transaction is generally not the transaction that Defendants claim it is.

105.    There was no "true sale" into the securitization trust.

106.    Plaintiff never owed the amount(s) claimed by Defendants.

107.    The purported Trustee was not notified that it was named as Trustee and therefore could not exercise its powers and had no powers and was not in in any practical sense a Trustee.

108.    No Note bearing Plaintiff's signature was conveyed from any Defendant to any other Defendant.

109.    No Note bearing Plaintiff's signature was delivered from any Defendant to any other Defendant.

110.    No Note bearing Plaintiff's signature was negotiated from any Defendant to any other Defendant.

111.    No Defendant was a bona fide purchaser for value of any Note encumbering the Property.

112.    No Defendant ever held any Note encumbering the Property, or such Note has been lost or stolen or destroyed or cancelled or further assigned.

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

Case: 18-05062    Doc# 65    Filed: 04/11/19    Entered: 04/11/19 16:59:26    Page 17 of 30

113. Within 30 days after the date on which any Note or Loan encumbering the Property was sold or otherwise transferred or assigned to a new party, the creditor that was the new owner or assignee of the debt DID NOT notify Plaintiff in writing of such transfer. (See 131 of the Truth in Lending Act (15 U.S.C. 1641).)

114. Any Note encumbering the Property was pledged as collateral for other secured transactions.

115. As part of the purported transaction, a national bank lent its credit, directly or indirectly.

116. No Defendant paid any value for any Note encumbering the Property.

117. No Defendant acquired in good faith any Note encumbering the Property.

## THE BREAK IN CHAIN OF TITLE

118. There is no chain of title from Plaintiff to any Defendant.

## SECTION 22 WAS NOT COMPLIED WITH

119. Defendants failed to comply with any of the conditions precedent set forth in paragraph 22 of the Second Deed.

120. The purported Trustee has never been informed of the existence of the Second Deed.

## SERVICING VIOLATIONS

121. The purported servicer, NEWPORT BEACH HOLDINGS, LLC, did not credit all payments to Plaintiff's account.

122. The authenticity of, and authority to make, each signature on any purported Note is hereby specifically denied.

## THE FIRST CORPORATE ASSIGNMENT OF DEED OF TRUST

18

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

123. On 12/17/2015, RICHARD MONROE/TARA NEWTON recorded as 23175056 a CORPORATE ASSIGNMENT OF DEED OF TRUST ("First Corporate Assignment"), dated 7/21/2015 and purportedly signed on 7/21/2015 by Robert Madden as Assistant Secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. and purportedly notarized on 7/21/2015 in Orange, California by Thanh Vo.

124. The First Corporate Assignment states:

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION, ITS SUCCESSORS AND ASSIGNS, whose address is P.O. BOX 2026, FLINT, MI 48501-2026 hereby grants, assigns and transfers to Newport Beach Holdings, LLC, at 2618 San Miguel Drive, Suite 319, Newport Beach, CA 92660 all beneficial interest under that certain Deed of Trust dated 1/9/2007, in the amount of $131,000.00, executed by CECILIA MANGAOANG, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION, ITS SUCCESSORS AND ASSIGNS and Recorded: 1/18/2007 ... as Instrument No.: 19268026 in Santa Clara County, State of California and all rights accrued or to accrue under said Deed of Trust.

125. On the date of the First Corporate Assignment to Newport Beach, namely 7/21/2015, AIDAN WEST FINANCIAL GROUP had a status of "Suspended FTB" by the Franchise Tax Board. Therefore, Aidan West could not assign any loans on that date.

126. As of 7/21/2015, Newport Beach Holdings, LLC did not exist. Therefore, Newport Beach could not receive any assignment of any loan on that date.

127. There was no "Value Received." Newport Beach Holdings, LLC did not pay any consideration to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION, ITS SUCCESSORS AND ASSIGNS for the First Corporate Assignment.

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

128. The First Corporate Assignment does not state "together with the Note."

129. No Note was assigned, negotiated, given, bargained, transferred or conveyed together with the First Corporate Assignment.

**Signer**

130. Robert Madden was never Assistant Secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

131. Robert Madden failed to verify the chain of title before signing the First Corporate Assignment.

132. Robert Madden signed the First Corporate Assignment without review of any information or documentation.

133. On 7/21/2015, and at all times, Robert Madden was not authorized to sign the First Corporate Assignment.

134. The First Corporate Assignment was not signed by a duly authorized corporate officer.

135. There is no corporate resolution or other document appointing Robert Madden as Assistant Secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

136. There is no corporate resolution or other document directly or indirectly granting authority to Robert Madden to sign the First Corporate Assignment.

137. There was never any decision made by the Board of Directors of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. directly or indirectly granting authority to Robert Madden to sign the First Corporate Assignment.

138. Beyond the signing of Deeds, Robert Madden has no powers, authority or duties as

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

an Assistant Secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

139.   In the alternative and without waiving the foregoing, Robert Madden did not sign the First Corporate Assignment; someone else did using that name.

**Notary**

140. The First Corporate Assignment was purportedly notarized on 7/21/2015 in Orange, California by Thanh Vo.

141. Thanh Vo was not a notary of California.

142. Robert Madden did not sign in the presence of Thanh Vo.

143. Robert Madden did not read the First Corporate Assignment and was not aware of its contents when signing it.

144. Robert Madden was not personally known to Thanh Vo and did not produce any identification for Thanh Vo.

145. The log book of Thanh Vo will show that the First Corporate Assignment was not signed nor notarized on 7/21/2015, nor on any other date.

**Jurat**

146. The First Corporate Assignment states:

On 7/21/15, before me, Thanh Vo, a Notary Public in and for ORANGE [sic] in the State of CALIFORNIA, personally appeared ROBERT MADDEN, Assistant Secretary [sic], personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

147. The jurat of the First Corporate Assignment does not comply with California law.

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

**Void**

148.　The First Corporate Assignment is void as a matter of law because:

149.　(a) Robert Madden lacked any authority to sign the First Corporate Assignment on July 21, 2015, and

150.　(b) MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. was not in possession of the Note and was not a "person entitled to enforce the Note" on July 21, 2015, nor at any time, and

151.　(c) NEWPORT BEACH HOLDINGS, LLC paid no consideration for the Note, was not in possession of the Note, and was not a "person entitled to enforce the Note" on July 21, 2015, nor at any time, and

152.　(d) MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. lacked any authority to create the First Corporate Assignment on July 21, 2015, and

153.　(e) MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. lacked any authority to record the First Corporate Assignment in Orange County, California on 7/21/2015, rendering the First Corporate Assignment void as a matter of law, and

154. (f) no county is named, and

155. (g) The title "Assistant Secretary" is given, but no organization is specified.

156.　Plaintiff is entitled to entry of judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring the purported First Corporate Assignment void.

*THE SUBSTITUTION OF TRUSTEE*

157. On 9/09/2016, SDS recorded as 23426665 a SUBSTITUTION OF TRUSTEE purportedly signed on 8/31/2016 by Don A. Madden, Jr. as unspecified officer, employee or agent

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

of NEWPORT BEACH HOLDINGS, LLC and purportedly notarized on 8/31/2016 in Orange County, California by Alida M. Rice.

158. Defendants failed to provide a copy of the Substitution of Trustee after it was recorded in violation of California Civil Code 2924.

159. The SUBSTITUTION OF TRUSTEE states:

NOW THEREFORE, NEWPORT BEACH HOLDINGS, LLC hereby substitutes Special Default Services, Inc., whose address is 17100 Gillette Ave, Irvine, CA 92614, as Trustee under said Deed of Trust.

160. On its face, the SUBSTITUTION OF TRUSTEE was signed by Don A. Madden, Jr. at most in his individual capacity, and NOT as an officer, employee or agent of NEWPORT BEACH HOLDINGS, LLC.

161. Special Default Services, Inc. was not notified that it was named as Trustee and therefore could not exercise its powers and had no powers and was not in in any practical sense a Trustee.

**Signer**

162. Don A. Madden, Jr. is a founder of TRINITY FINANCIAL SERVICES, LLC.

163. Don A. Madden, Jr. was never an officer, employee or agent of NEWPORT BEACH HOLDINGS, LLC.

164. Don A. Madden, Jr. failed to verify the chain of title before signing the SUBSTITUTION OF TRUSTEE.

165. Don A. Madden, Jr. signed the SUBSTITUTION OF TRUSTEE without review of any information or documentation.

166. On 8/31/2016, and at all times, Don A. Madden, Jr. was not authorized to sign the

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

Case: 18-05062    Doc# 65    Filed: 04/11/19    Entered: 04/11/19 16:59:26    Page 23 of 30

SUBSTITUTION OF TRUSTEE.

167.    The SUBSTITUTION OF TRUSTEE was not signed by a duly authorized corporate officer.

168.    There is no corporate resolution or other document appointing Don A. Madden, Jr. as an officer, employee or agent of NEWPORT BEACH HOLDINGS, LLC.

169.    There is no corporate resolution or other document directly or indirectly granting authority to Don A. Madden, Jr. to sign the SUBSTITUTION OF TRUSTEE.

170.    There was never any decision made by the Board of Directors of NEWPORT BEACH HOLDINGS, LLC directly or indirectly granting authority to Don A. Madden, Jr. to sign the SUBSTITUTION OF TRUSTEE.

171.    Beyond the signing of Deeds, Don A. Madden, Jr. has no powers, authority or duties as an officer, employee or agent of NEWPORT BEACH HOLDINGS, LLC.

172.    In the alternative and without waiving the foregoing, Don A. Madden, Jr. did not sign the SUBSTITUTION OF TRUSTEE; someone else did using that name.

**Notary**

173. The SUBSTITUTION OF TRUSTEE was purportedly notarized on 8/31/2016 in Orange County, California by Alida M. Rice.

174. Alida M. Rice was not a notary of California.

175. Don A. Madden, Jr. did not sign in the presence of Alida M. Rice.

176. Don A. Madden, Jr. did not read the SUBSTITUTION OF TRUSTEE and was not aware of its contents when signing it.

177. Don A. Madden, Jr. was not personally known to Alida M. Rice and did not produce

24

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

any identification for Alida M. Rice.

178. The log book of Alida M. Rice will show that the SUBSTITUTION OF TRUSTEE was not signed nor notarized on 8/31/2016, nor on any other date.

**Jurat**

179. The SUBSTITUTION OF TRUSTEE states:

On August 31, 2016, before me, Alida M. Rice, Notary Public, personally appeared Don A. Madden, Jr., who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of CALIFORNIA that the foregoing paragraph is true and correct.

180. The jurat of the SUBSTITUTION OF TRUSTEE does not comply with California law.

### *THE NOTICE OF DEFAULT*

181. On 9/09/2016, SDS recorded as 23426666 a NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST ("NOD") with Trustee Sale CA01000170-16, purportedly signed by Lisa Rohrbacker as Trustee Sales Officer of "Special Default Service, Inc. as Duly Appointed Successor Trustee."

182. Defendants failed to notify or initiate contact with Plaintiff to discuss available options prior to the recording of the NOD in violation of California Civil Code Section 2923.5.

183. Defendants failed to provide a copy of the Notice of Default after recording it in violation of Civil Code Sections 2923.5 and 2924.

184. The NOD states:

NOTICE IS HEREBY GIVEN THAT: Special Default Services, Inc. is the original

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated as of January 9, 2007, ...

185. Special Default Services, Inc. was not the original Trustee under any Deed of Trust encumbering the Property.

186. Special Default Services, Inc. was not the duly appointed Substituted Trustee under any Deed of Trust encumbering the Property.

187. Special Default Services, Inc. was not acting as Agent for the Trustee or Beneficiary under any Deed of Trust encumbering the Property.

**Signer**

188. Lisa Rohrbacker was never Trustee Sales Officer of SDS.

189. Lisa Rohrbacker failed to verify the chain of title before signing the NOD.

190. Lisa Rohrbacker signed the NOD without review of any information or documentation.

191. On 9/09/2016, and at all times, Lisa Rohrbacker was not authorized to sign the NOD.

192. The NOD was not signed by a duly authorized corporate officer.

193. There is no corporate resolution or other document appointing Lisa Rohrbacker as Trustee Sales Officer of SDS.

194. There is no corporate resolution or other document directly or indirectly granting authority to Lisa Rohrbacker to sign the NOD.

195. There was never any decision made by the Board of Directors of SDS directly or indirectly granting authority to Lisa Rohrbacker to sign the NOD.

196. Beyond the signing of NOD's, Lisa Rohrbacker has no powers, authority or duties

26

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

as a Trustee Sales Officer of SDS.

197.   In the alternative and without waiving the foregoing, Lisa Rohrbacker did not sign the NOD; someone else did using that name.

### THE VIOLATIONS OF CAL.CIV.CODE §2924

198. The sale proceedings were postponed for periods totaling more than 365 days, and no new notice of sale was given as required by Cal.Civ.Code § 2924f, in violation of § 2924g(c)(2).

199. The notice of each postponement and the reason therefor were not given by public declaration by the trustee at the time and place last appointed for sale, in violation of § 2924g(d).

200. Attached to the NOD is a CALIFORNIA DECLARATION OF COMPLIANCE dated 8/31/2016.

201. The CALIFORNIA DECLARATION OF COMPLIANCE states:

> No contact was made with the Borrower pursuant to Civil Code § 2923.55 because the above-referenced loan is not secured by a first lien mortgage or deed of trust that secures a loan described in Civil Code § 2924.15(a).[4]

---

[4] Civil Code § 2924.15(a) states: "Unless otherwise provided, paragraph (5) of subdivision (a) of Section 2924, and Sections 2923.5, 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, and 2924.18 shall apply only to first lien mortgages or deeds of trust that are secured by owner-occupied residential real property containing no more than four dwelling units. For these purposes, owner-occupied means that the property is the principal residence of the borrower and is security for a loan made for personal, family, or household purposes."
Civil Code § 2923.55(c) states: "A notice of default recorded pursuant to Section 2924 shall include a declaration that the mortgage servicer has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required because the individual did not meet the definition of borrower pursuant to subdivision (c) of Section 2920.5."
Civil Code § 2920.5 states: "(c)(1) Unless otherwise provided and for purposes of Sections 2923.4, 2923.5, 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, 2924.18, and 2924.19, "borrower" means any natural person who is a mortgagor or trustor and who is potentially eligible for any federal, state, or proprietary foreclosure prevention alternative program offered by, or through, his or her mortgage servicer.
(2) For purposes of the sections listed in paragraph (1), "borrower" shall not include any of the following:
(A) An individual who has surrendered the secured property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary, or authorized agent.
(B) An individual who has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries.
(C) An individual who has filed a case under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code and the bankruptcy court has not entered an order closing or dismissing the bankruptcy case, or granting relief from a stay of foreclosure."

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

202. Plaintiff has never surrendered the secured property.

203. Plaintiff has never sent any letter confirming any such surrender.

204. Plaintiff has never delivered the keys to the Property to anyone

205. Plaintiff has never contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries.

206. As of 8/31/2016, Plaintiff did not have a case open under Chapter 13 of Title 11 of the United States Code.

207. Plaintiff never filed a case under Chapter 13 of Title 11 of the United States Code before 1/31/2017.

208. The CALIFORNIA DECLARATION OF COMPLIANCE was purportedly signed on 8/31/2016 by Don A. Madden, Jr. as unspecified officer, employee or agent of NEWPORT BEACH HOLDINGS, LLC.

209. Don A. Madden, Jr. was never an officer, employee or agent of NEWPORT BEACH HOLDINGS, LLC.

210. Don A. Madden, Jr. signed the CALIFORNIA DECLARATION OF COMPLIANCE without review of any information or documentation.

***THE VIOLATIONS OF CAL.CIV.CODE §2923.3 AND §2923.5***

211. No one ever provided to Plaintiff any of the information required by Cal.Civ.Code §2923.3.

212. No one contacted Plaintiff before the Notice of Default was filed.

213. No one ever contacted Plaintiff for the purpose of exploring options to avoid

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

foreclosure.[5]

214. No one ever discussed foreclosure alternatives with Plaintiff.

215. No one ever provided Plaintiff with a single point of contact.

216. Plaintiff was never served with the Notice of Default.

217. No one contacted Plaintiff before the Notice of Default was filed.

218. No one ever provided Plaintiff with the amount owed.

219. No one ever provided Plaintiff with the date by which the Plaintiff could pay off the alleged debt to avoid foreclosure.

### THE *SECOND* CORPORATE ASSIGNMENT OF DEED OF TRUST

220. On 9/12/2018, NEWPORT BEACH HOLDINGS, LLC recorded as 24022209 a CORPORATE ASSIGNMENT OF DEED OF TRUST ("Second Corporate Assignment"), dated 8/24/2018 and purportedly signed on 8/24/2018 by Sharon Mitchell as Assistant Vice President of NEWPORT BEACH HOLDINGS, LLC and purportedly notarized on 8/24/2018 in Stone County, Missouri by Jessica Brown.

221. The Second Corporate Assignment states:

For Value Received, NEWPORT BEACH HOLDINGS, LLC, whose address is 2618 SAN MIGUEL DRIVE, SUITE 319, NEWPORT BEACH, CA, 92660 (herein "Assignor") hereby grant, sell, assign, transfer and convey to Trinity Financial Services, LLC, whose address is 2618 SAN MIGUEL DR., SUITE 303, NEWPORT BEACH, CA, 92660 (herein "Assignee") all interest under that certain Deed of Trust Dated: 1/9/2007, in the amount of $131,000.00, executed by CECILIA MANGAOANG, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY to MORTGAGE ELECTRONIC REGISTRATION

---

[5] Civil Code § 2923.5 requires that, 30 days before a notice of default is filed, the mortgagee, beneficiary, or authorized agent "shall contact the buyer in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." See Cal. Civ. Code. § 2923.5; Cal. Civ. Code. § 2923.5(a); Argueta v. J.P. Morgan Chase, 787 F.Supp.2d 1099, 1107,(E.D.Cal. 2011); Paik v. Wells Fargo Bank, N.A., 2011 WL 109482, at *3 (N.D.Cal. Jan. 13, 2011); Mabry v. Superior Ct., 185 Cal.App.4th 208, 220 & n.6 (2010). The remedy for a violation of § 2923.5 is postponement of the foreclosure sale until there has been compliance with the statute. Argueta, 787 F.Supp. At 1107.

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

29

SYSTEMS, INC. AS NOMINEE FOR AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION, ITS SUCCESSORS AND ASSIGNS and Recorded: 1/18/2007, Document#: 19268026 in SANTA CLARA County, State of California and all rights accrued or to accrue under said Deed of Trust.

222. There was no "Value Received." Trinity Financial Services, LLC did not pay any consideration to NEWPORT BEACH HOLDINGS, LLC for the Second Corporate Assignment.

223. The Second Corporate Assignment does not state "together with the Note."

224. No Note was assigned, negotiated, given, bargained, transferred or conveyed together with the Second Corporate Assignment.

**Signer**

225. Sharon Mitchell was never Assistant Vice President of NEWPORT BEACH HOLDINGS, LLC.

226. Sharon Mitchell failed to verify the chain of title before signing the Second Corporate Assignment.

227. Sharon Mitchell signed the CORPORATE ASSIGNMENT OF DEED OF TRUST without review of any information or documentation.

228. On 8/24/2018, and at all times, Sharon Mitchell was not authorized to sign the CORPORATE ASSIGNMENT OF DEED OF TRUST.

229. The CORPORATE ASSIGNMENT OF DEED OF TRUST was not signed by a duly authorized corporate officer.

230. There is no corporate resolution or other document appointing Sharon Mitchell as Assistant Vice President of NEWPORT BEACH HOLDINGS, LLC.

231. There is no corporate resolution or other document directly or indirectly granting authority to Sharon Mitchell to sign the CORPORATE ASSIGNMENT OF DEED OF TRUST.

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT