232.    There was never any decision made by the Board of Directors of NEWPORT BEACH HOLDINGS, LLC directly or indirectly granting authority to Sharon Mitchell to sign the CORPORATE ASSIGNMENT OF DEED OF TRUST.

233.    Beyond the signing of Deeds, Sharon Mitchell has no powers, authority or duties as a Assistant Vice President of NEWPORT BEACH HOLDINGS, LLC.

234.    In the alternative and without waiving the foregoing, Sharon Mitchell did not sign the CORPORATE ASSIGNMENT OF DEED OF TRUST; someone else did using that name.

**Notary**

235. The CORPORATE ASSIGNMENT OF DEED OF TRUST was purportedly notarized on 8/24/2018 in Stone County, Missouri by Jessica Brown.

236. Jessica Brown was not a notary of Missouri.

237. Sharon Mitchell did not sign in the presence of Jessica Brown.

238. Sharon Mitchell did not read the CORPORATE ASSIGNMENT OF DEED OF TRUST and was not aware of its contents when signing it.

239. Sharon Mitchell was not personally known to Jessica Brown and did not produce any identification for Jessica Brown.

240. The log book of Jessica Brown will show that the CORPORATE ASSIGNMENT OF DEED OF TRUST was not signed nor notarized on 8/24/2018, nor on any other date.

**Jurat**

241. The CORPORATE ASSIGNMENT OF DEED OF TRUST states:

On August 24, 2018, before me, Jessica Brown, a Notary Public in and for STONE County, in the State of MISSOURI, personally appeared SHARON MITCHELL, ASSISTANT VICE PRESIDENT, NEWPORT BEACH HOLDINGS, LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and

31

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

242. The jurat of the CORPORATE ASSIGNMENT OF DEED OF TRUST does not comply with Missouri law.

**Void**

243.    The CORPORATE ASSIGNMENT OF DEED OF TRUST is void as a matter of law because:

244.    (a) Sharon Mitchell lacked any authority to sign the Corporate Assignment on August 24, 2018, and

245.    (b) NEWPORT BEACH HOLDINGS, LLC was not in possession of the Note and was not a "person entitled to enforce the Note" on August 24, 2018, nor at any time, and

246.    (c) TRINITY FINANCIAL SERVICES, LLC paid no consideration for the Note, was not in possession of the Note, and was not a "person entitled to enforce the Note" on August 24, 2018, nor at any time, and

247.    (d) NEWPORT BEACH HOLDINGS, LLC lacked any authority to create the Corporate Assignment on August 24, 2018, and

248.    (e) NEWPORT BEACH HOLDINGS, LLC lacked any authority to record the Corporate Assignment in Stone County, Missouri on 9/12/2018, rendering the Corporate Assignment void as a matter of law.

249.    Plaintiff is entitled to entry of judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring the purported CORPORATE ASSIGNMENT OF DEED OF TRUST void.

*THE NOTICE OF TRUSTEE'S SALE*

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

250.    On 09/06/2018, SDS recorded as 24018268 a NOTICE OF TRUSTEE'S SALE, dated 9-5-2018 and purportedly signed by Lisa Welch as Trustee Sales Officer of "Special Default Service, Inc. as Duly Appointed Successor Trustee."

251. SDS is not a "Duly Appointed Successor Trustee" because, on its face, the SUBSTITUTION OF TRUSTEE was signed by Don A. Madden, Jr. at most in his individual capacity, and NOT as an officer, employee or agent of NEWPORT BEACH HOLDINGS, LLC., and for other reasons as discussed above.

***THE SALE***

252. On 11/15/2018, SDS recorded as 24064356 a TRUSTEE'S DEED UPON SALE ("Trustee's Deed"), dated 11/8/2018 and purportedly signed by Lisa Welch as Trustee Sales Officer of "Special Default Service, Inc. as Duly Appointed Successor Trustee" and purportedly notarized on 11/8/2018 in Orange County, California by Bernardo Sotelo-Hernandez.

**Signer**

253. Lisa Welch was never Trustee Sales Officer of SDS.

254. Lisa Welch failed to verify the chain of title before signing the TRUSTEE'S DEED UPON SALE.

255.    Lisa Welch signed the TRUSTEE'S DEED UPON SALE without review of any information or documentation.

256.    On 11/8/2018, and at all times, Lisa Welch was not authorized to sign the TRUSTEE'S DEED UPON SALE recorded as 24064356.

257.    The TRUSTEE'S DEED UPON SALE was not signed by a duly authorized corporate officer.

33

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

258.    There is no corporate resolution or other document appointing Lisa Welch as Trustee Sales Officer of SDS.

259.    There is no corporate resolution or other document directly or indirectly granting authority to Lisa Welch to sign the TRUSTEE'S DEED UPON SALE recorded as 24064356.

260.    There was never any decision made by the Board of Directors of SDS directly or indirectly granting authority to Lisa Welch to sign the TRUSTEE'S DEED UPON SALE recorded as 24064356.

261.    Beyond the signing of Deeds, Lisa Welch has no powers, authority or duties as a Trustee Sales Officer of SDS.

262.    In the alternative and without waiving the foregoing, Lisa Welch did not sign the TRUSTEE'S DEED UPON SALE; someone else did using that name.

**Notary**

263. The TRUSTEE'S DEED UPON SALE was purportedly notarized on 11/8/2018 in Orange County, California by Bernardo Sotelo-Hernandez

264. Bernardo Sotelo-Hernandez was not a notary of California.

265. Lisa Welch did not sign in the presence of Bernardo Sotelo-Hernandez.

266. Lisa Welch did not read the TRUSTEE'S DEED UPON SALE and was not aware of its contents when signing it.

267. Lisa Welch was not personally known to Bernardo Sotelo-Hernandez and did not produce any identification for Bernardo Sotelo-Hernandez.

268. The log book of Bernardo Sotelo-Hernandez will show that the TRUSTEE'S DEED UPON SALE was not signed nor notarized on 11/8/2018, nor on any other date.

34

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

**Jurat**

269. The TRUSTEE'S DEED UPON SALE states:

On 11-8-18 before me, Bernardo Sotelo-Hernandez, a Notary Public, personally appeared LISA WELCH, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of CALIFORNIA that the foregoing paragraph is true and correct.

270. The jurat of the TRUSTEE'S DEED UPON SALE does not comply with California

law.

271. The Trustee's Deed states:

WHEN RECORDED MAIL DEED AND TAX STATEMENT TO:
TRINITY FINANCIAL SERVICES, LLC
2618 SAN MIGUEL DRIVE
SUITE 303
NEWPORT BEACH, CA 92660

272. The Trustee's Deed states:

The undersigned Grantor, under penalty of perjury, declares:
EXEMPT PER R&T CODE SECTION 11926
1) The Grantee herein was the foreclosing beneficiary.
2) The amount of the unpaid debt together with costs was: $300,408.97
3) The amount paid by the grantee at the trustee sale was: $300,408.97
4) The documentary transfer tax is: $0.00
5) Said property is in the city of: SAN JOSE
6) A.P.N. 092-11-091
and Special Default Services, Inc., herein called "Trustee", as Trustee (or as Successor Trustee) of the Deed of Trust hereinafter described, hereby grants and conveys, but without covenant or warranty, express or implied, to TRINITY FINANCIAL SERVICES, LLC, herein called "Grantee", the real property in the County of Santa Clara, State of California, described as follows: SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

273. The reason for the exemption was not noted on the Trustee's Deed, in violation of

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

California law.

274. Special Default Services, Inc. was not a lawful Trustee on 11/8/2018.

275. Special Default Services, Inc. was never a lawful Trustee.

276. The Deed states:

Pursuant to the Notice of Trustee's Sale, the above described property was sold by Trustee (or Successor Trustee) at public auction on **November 5, 2018** at the place specified in said Notice, to Grantee who was the highest bidder therefore, for $300,408.97 in lawful money of the United States, which has been paid, or by credit bid if the Grantee was the beneficiary of said Deed of Trust at the time of said public auction.

277. The public auction on November 5, 2018 was not lawfully conducted.

278. The Trustee's Deed is invalid because the sale date (11/5/2018) occurred more than one year after the Notice of Default (9/09/2016).

### TENDER

279. Each of the Defendants is not a mortgagee whatsoever, and is otherwise making a completely unsubstantiated claim to the property. [6]

## FIRST CAUSE OF ACTION
### (Quiet Title)
### (Against All Defendants)

280.   The allegations under "Facts" are re-alleged as if fully set forth.

281.   All Defendants claimed, and continue to claim, an interest and estate in the real property at issue by recording the NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST.

---

[6] Tender is not required where the Complaint alleges that the defendant is not a mortgagee "whatsoever." See [48] Order in Case 1:11-cv-00714-JMS-BMK (Seabright, J). See also Klohs et al. v. Wells Fargo Bank, N.A., Civ. No. 12-00274 JMS-KSC, Order Granting Defendant Wells Fargo Bank N.A.'s Motion to Dismiss (Seabright, J.) (citing Amina v. BONYM (D. Haw. Aug. 9, 2012)).

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

282.    All Defendants claimed, and continue to claim, an interest and estate in the real property at issue by recording the TRUSTEE'S DEED UPON SALE.

283.    At all times relevant to this Complaint, Plaintiff was and is in possession and has been in continuous possession of the real property at issue, against all the world, and has paid all lawful property taxes thereon.

284.    The real property at issue is the homestead and domicile of Plaintiff.

285.    Plaintiff has superior and legal title to, and other interest in, the real property at issue.

286.    Plaintiff's title comes from a Deed.

287.    Any and all loans encumbering the Property have been paid or otherwise discharged.

288.    At all times relevant to this Complaint, Plaintiff was and is the owner of the real property at issue and entitled to such ownership and use without interference by the Chase Defendants.

289.    Defendants' claims to any right, title or interest in the property are false and without merit.

290.    As a result of the above-described wrongful actions, Plaintiff has suffered damages in an amount to be determined at trial, for which the above-named parties are jointly and severally liable.

291.    Plaintiff seeks a decree quieting title to the real property at issue in Plaintiff as of the date the Complaint was filed, and such further equitable relief as the Court deems proper.

## SECOND CAUSE OF ACTION

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

**(Fair Debt Collection Practices Act, FDCPA (15 U.S.C. § 1692-1692o))**
**(Against Defendant Newport Beach, Special Default Services)**

292.    The allegations under "Facts" are re-alleged as if fully set forth.

293.    All Defendants are "debt collector[s]" as defined by 15 U.S.C. § 1692a (6) and other definitional requirements and devote a substantial portion of their business to the collection of consumer debts, such as the alleged debt at issue in this litigation.

294.    The debt alleged by Defendants, at issue in this litigation, is covered as a debt as defined 15 U.S.C. 1692a (5) and 15 U.S.C. § 15 USC 1692a [FDCPA Section 803], since it was incurred for the personal, family or household purposes of the Plaintiff and the filing of documents under purported authority, which parties did not have, to falsely represent that it had interests for the personal, family or household purposes of the Plaintiff which violated 15 U.S.C. § 807 (10), 808 (6)(A) and 812.

295.    The "debt" was never acquired by Newport Beach.

296.    Newport Beach never paid consideration.

297.    There was no "true sale" to Newport Beach.

298.    Newport Beach attempted to collect a debt not owed to it, in violation of the FDCPA.[7]

299.    These acts as well as the attempted foreclosure are wrongful, intentional, reckless, willful and wanton, negligent, deceptive, and predatory. Defendants knew they should not falsify documents particularly official documents meant to prove a material fact such as secured creditor status. The perjured documents violate 15 U.S.C. §1692e(10) and 15 U.S.C. §1692f.

---

[7] "This bill also protects people who do not owe money at all. In the collector's zeal, collection efforts are often aimed at the wrong person either because of mistaken identity or mistaken facts." House Report 95-131, 95th Cong., 1st Sess., p. 8. Accord, Senate Report No. 95-382, p. 4, reprinted at 1997 USCCAN 1695, 1699.

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

300. As a result of the aforesaid FDCPA violations, Plaintiff has been subjected to false and illegal collection activities, and have therefore been harmed due to the slander to Plaintiff's credit and emotional/physical health issues proximately caused by these defendants.

301. As a result of the above-described wrongful actions, Plaintiff has suffered damages in an amount to be determined at trial, for which the above-named parties are jointly and severally liable.

### THIRD CAUSE OF ACTION
### (Cancellation of Instrument(s))
### (Against Defendants SPECIAL DEFAULT SERVICES, INC., NEWPORT BEACH HOLDINGS, LLC )

302. The allegations under "Facts" are re-alleged as if fully set forth.

303. The recorded instrument 19268026 (Second Deed) is void because it does not bear Plaintiff's signature.

304. The Second Deed is void because the loan was made in violation of the Federal Housing Act because the Property is not located within any place that has been ceded to the Federal Government by act of the California Legislature.

**MERS**

305. AIDAN WEST FINANCIAL GROUP has never been a member of MERS.

306. AIDAN WEST FINANCIAL GROUP has never been a nominee of MERS.

307. "AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION, organized and existing under the laws of the State of CALIFORNIA" has never been a member of MERS.

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

308. "AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION, organized and existing under the laws of the State of CALIFORNIA" has never been a nominee of MERS.

309. Therefore, the Second Deed lacks a beneficiary. Therefore, the Second Deed is void and should be cancelled.

310. The recorded instruments 24022209 (CORPORATE ASSIGNMENT OF DEED OF TRUST) and 23426666 (NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST) and 24064356 (TRUSTEE'S DEED UPON SALE) are void because they were forged and fabricated, or in the alternative because the signers lacked authorization to sign, and because the signers had not read the documents and did not know their contents, and because they were not properly notarized nor acknowledged, and because Plaintiff did not sign the documents that Defendants allege, and because Trinity never acquired any Note encumbering the Property, and because SDS was never properly appointed or substituted as Successor Trustee, and for fraud because the transaction was not as it was represented to be (e.g. the "Lender" did not lend money or credit), and for all reasons discussed above, and for other reasons yet to be discovered.

311. The recording of void instruments (namely, 19268026 (Second Deed) and 24022209 (CORPORATE ASSIGNMENT OF DEED OF TRUST) and 23426666 (NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST) and 24064356 (TRUSTEE'S DEED UPON SALE)) has damaged Plaintiff in an amount to be determined at trial, for which the above-named parties are jointly and severally liable. Plaintiff requests the Court cancel those recorded instruments.

## FOURTH CAUSE OF ACTION
### (Wrongful Foreclosure)
### (Against Defendants SPECIAL DEFAULT SERVICES, INC., NEWPORT BEACH

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

40

HOLDINGS, LLC, <u>TRINITY FINANCIAL SERVICES, LLC</u> )

312.   The allegations under "Facts" are re-alleged as if fully set forth.

313.   Special Default Services, Inc. caused a fraudulent and illegal sale of real property purportedly using the power of sale in the Second Deed. It was fraudulent and illegal because:

314.   (a) Special Default Services, Inc. was never a lawful Trustee. <u>Special Default Services, Inc. was never appointed as Trustee by anyone with authority to do so. The allegations under the heading "SUBSTITUTION OF TRUSTEE" are incorporated here.</u>

315.   (b) The Second Deed does not bear Plaintiff's signature.

316.   (c) The Second Deed states that MERS acts as nominee for "Lender" AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION, organized and existing under the laws of the State of CALIFORNIA. However, AIDAN WEST FINANCIAL GROUP, A CALIFORNIA CORPORATION, organized and existing under the laws of the State of CALIFORNIA has never been either a member or a nominee of MERS.

317.   Plaintiff was harmed by the sale. Real estate is unique, and Plaintiff no longer owns her home.

318.   Plaintiff had tendered the amount of what they owed, since Plaintiff owed nothing.

319.   In the alternative and without waiving the foregoing, Plaintiff was excused from tendering because each of the Defendants is not a mortgagee whatsoever, and is otherwise making a completely unsubstantiated claim to the property. See footnote (4) above.

320.   As a result of the above-described wrongful actions, Plaintiff has suffered damages in an amount to be determined at trial, for which the above-named parties are jointly and severally liable, and the Court should set aside the sale and <u>vacate</u> the Trustee's Deed.

### FIFTH CAUSE OF ACTION

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

41

**(Avoidance of Wholly Unsecured Lien)**
**(Against Defendants NEWPORT BEACH HOLDINGS, LLC, TRINITY FINANCIAL SERVICES, LLC )**

321.　The allegations under "Facts" are re-alleged as if fully set forth.

322.　The allegations under "SEEKING LIEN AVOIDANCE OF WHOLLY UNSECURED LIEN" are re-alleged as if fully set forth.

323.　As a result of the above-described wrongful actions, Plaintiff has suffered damages in an amount to be determined at trial, for which the above-named parties are jointly and severally liable, and the Court should avoid and vacate the Second Lien, and vacate the Second Deed of Trust.

## SIXTH CAUSE OF ACTION
### (Negligence)
### (Against Defendant JOHN G. DOWNING)

324.　The allegations under "Facts" are re-alleged as if fully set forth.

325.　Mr. Downing was Plaintiff's attorney in Bankruptcy Case #5:2017bk50208-MEH.

326.　During the pendency of that bankruptcy case, the first mortgage debt qualified for a "cram down" because the value of the home ($700,000 [8]) was less than the first mortgage balance ($796,066.53 [9]).

327.　Therefore, the first mortgage was partially unsecured and the second mortgage was wholly unsecured.

328.　During the pendency of that bankruptcy case, the Second Lien qualified for "lien stripping," permanently barring that creditor from foreclosing on the property, because of the following three facts:

---

[8] See [29-1] Mangaoang Supplemental Declaration, [29-2] Exhibit (historical appraisal as of 5/26/2017 by James A. Ruiz, Certified Appraiser AR009683, page 6) from case #17-50208-SLJ.

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

42

329. (1) There were a first and second mortgage on the home.

330. (2) The value of the home was such that there was no equity to secure the second mortgage.

331. (3) Absent the second mortgage payment, and with a reduced first mortgage payment, which a lien stripping and a cram down would have achieved, Plaintiff would be able to afford the home.

332. Mr. Downing had a duty to either move to strip the Second Lien and cram down the first mortgage debt, or file an Adversary Proceeding to strip the Second Lien and cram down the first mortgage debt.

333. Mr. Downing agreed to attempt to strip the Second Lien.

334. Mr. Downing did not move to strip the Second Lien.

335. Mr. Downing did not move to cram down the first mortgage debt.

336. Mr. Downing did not file an Adversary Proceeding.

337. As a result of the above-described wrongful actions, Plaintiff has suffered damages in an amount to be determined at trial. On 5/31/2018 the bankruptcy case was dismissed, and on 9/12/2018 Newport Beach assigned the second mortgage to Trinity (recorded document #24022209), and on 11/5/2018 Trinity foreclosed on the second mortgage (recorded document #24064356), and on 12/7/2018 Trinity filed for eviction (case #18CV339119). That eviction case is pending.

## PRAYER FOR RELIEF

338. WHEREFORE, Plaintiff demand judgment against Defendants and their

---

[9] See [2] Proof of Claim filed by Wilimington Trust on 6/9/2017 in case #17-50208-SLJ.
VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

43

predecessors in interest as follows:

339. **An immediate injunction, and/or reinstatement of the stay, enjoining the Superior Court of California, County of Santa Clara, from continuing with eviction (forcible entry / unlawful detainer) lawsuit #18CV339119**, and enjoining Trinity from prosecuting such case, and from reporting negative information to any credit bureau pending resolution of this case.

340. A judgment and order reopening case 17-50208-SLJ and "stripping" the Second Lien and "cramming down" the first mortgage to $700,000, and adjudging that the Second Note is no longer secured by the Second Deed of Trust;

341. Or in the alternative and without waiving the foregoing, a judgment and order "cramming down" the Second Lien and the Second Deed of Trust (19268026) and the First Corporate Assignment (23175056) and the Second Corporate Assignment (24022209) and the Trustee's Deed Upon Sale (24064356), adjudging that the Second Note is no longer wholly secured by the Second Deed of Trust against the above-described real property unless this Chapter 13 case is later dismissed prior to discharge.

342. Money damages in the amount of $1,050,000.00 from each Defendant, for which Defendants are jointly and severally liable; or in the alternative if this matter goes to trial, money damages from each Defendant in the amount determined at trial.

343.   An Order declaring Plaintiff to be owner of and entitled to possession of the real property at issue free of any claim, estate, title, lien or interest of Defendants or those claiming under Defendants, and quieting title in such property in Plaintiff; a Judgment for treble damages; cancellation of the above-described recorded instruments; an injunction enjoining Defendants from reporting negative information to any credit bureau and from evicting; an injunction in the nature

44

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

of a stay of the eviction proceedings #18CV339119, whether by extending or reinstating the automatic stay or by some other mechanism; an order setting aside the sale and vacating the Trustee's Deed Upon Sale (recorded doc #24064356).

344. Award to Plaintiff her reasonable costs, disbursements and prejudgment interest.

345. An accounting from each Defendant of all funds handled in any way concerning the mortgage loan.

346. Such other relief as the court may deem proper.

347. Plaintiff reserves the right to further amend this Complaint.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct pursuant to 28 U.S.C. 1746.

Executed on this ___11___ day of February, 2019.

/s/ _Cecilia Mangaoang_
Cecilia Mangaoang
2901 Capewood Lane
San Jose, CA 95132-1108
(408) 876-9950

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

45

# EXHIBIT   A

Bruce G. Silver, M.D.
287 Alta Vista Avenue
Los Altos, California 94022

Phone: 610-329-3002
Fax: 877-992-4596
E-mail: brucesilvermd@gmail.com

January 11, 2018

To Whom It May Concern:

Re: Mangaoang, Ferdinand

The above named is my patient and lacks mental competency to handle his own affairs.
This condition is permanent. He had a hemorrhagic stroke.

I hope the information is helpful.

Thank you.

Sincerely,

Bruce G. Silver, M.D.

BGS/clh

# EXHIBIT   B



**BAY AREA**
**HOUSE CALL PHYSICIANS**

December 13, 2018

Re: Mangaoang, Ferdinand
DOB: 7/2/1957
2901 Capewood Lane
San Jose, CA 95132

To whom it may concern:

    This is to inform you that the above- named patient has been under our care for one year. We visit him in his home approximately every 6 weeks unless he has an urgent situation. The patient suffers from Hemiplegia and Hemiparesis following 2 strokes in 2016. Presently, he is homebound and bedbound and requires 24 hour care/total care and requires oxygen to survive. There are serious considerations that need to be addressed in order to move/relocate this patient. If you have additional questions, please feel free to contact me.

Thank you,

Fariba Iseyedsoleiman, DNP

12/13/18

EXHIBIT C





## wishbook2018

# 'It's better here than at the nursing home'

### Silicon Valley Independent Living Center helps ease the financial burden for those with disabilities who want to stay in their homes



In their San Jose home recently, Maria Isabel Chici, 19, hugs her grandfather, Ferdinand Mangsanong, 62, who suffered a severe stroke in 2016. With help from a nonprofit, he was able to move from a skilled nursing facility back into his home.

### WISH BOOK: THE SERIES

The Wish Book is an annual series of The Mercury News that invites readers to help their neighbors. WISH Donations will help Silicon Valley Independent Living Center provide home accessibility and safety modifications so that people with disabilities can remain in their homes. Goal: $25,000

**HOW TO GIVE** Donate at wishbook.mercurynews.com or mail in the coupon on Page 6B

**ONLINE** Read other Wish Book stories, view photos and video at wishbook.mercury news.com

### By John Woolfolk
jwoolfolk@
bayareanewsgroup.com

Ferdinand Mangsanong was enjoying retirement after a long career as a craftsman, indulging his passion for cooking and spending time with his wife, children and grandkids. He had a scare three years ago with a mild stroke that slowed his gait, but he seemed to otherwise recover.

But on June 10, 2016, disaster struck. His wife, Cecilia, found him snoring and drooling in the morning, unable to get up. Their son and daughter-in-law gave him CPR, but medics gave him grave odds as they whisked him to the hospital.

Ferdinand, 62, survived the stroke, but this time the damage was profound, and his prospects for returning home were daunting. Af-

ter two weeks in a coma, he was sent to nursing homes, where he remained bedridden, reliant on breathing and feeding tubes.

But the Mangsanong fam-



"We really appreciate that they put Ferdinand back in his home so we can take care of him."

— Cecilia Mangsanong, Ferdinand's wife

ily got a break when the Silicon Valley Independent Living Center worked with them to modify their San Jose home to accommodate Ferdinand's

MORE ▶ PAGE 6

---

HOUSING GOALS

# Getting 'people off the streets'

### County Board of Supervisors to vote today on funding construction of 1,000 affordable rental homes

### By Marissa Kendall
mkendall@bayareanewsgroup.com

More than 1,000 new and rehabbed affordable homes could be coming to Santa Clara County, the latest projects to spring from a massive 2016 housing bond and a milestone that advocates say will help the region's poorest residents.

The Santa Clara County Board of Supervisors is expected today to approve funding for construction of six new affordable rental projects and the rehabilitation of three existing buildings, using money from the $950 million housing bond that county voters narrowly passed two years ago. If the latest units are approved, the Measure A bond will have funded 49 projects over the past year and a half, putting the county ahead of schedule in allocating the money and meeting its housing goals.

"That's going to get people off the streets," said Ky Le, director of Santa Clara County's Office of Supportive Housing, "and provide them the stability they need in order to address their health issues, in order to address their employment and vocational needs."

After the state dissolved redevelopment agencies in 2012, drying up what had previously been a major source of funding for low-income housing, many local cities and counties asked voters to replenish their coffers by approving new bonds and taxes.

In Alameda County, voters in 2016 approved Measure A1 authorizing $580 million in bonds for affordable housing. So far, $64 million of that money has gone toward building 3,100 affordable homes, said Wilma Chan, president of the Alameda County Board of Supervisors. San Mateo County voters in 2016 approved extending a

MEASURE A ▶ PAGE 8

### MEASURE A

In 2012, the state dissolved its own redevelopment agencies, which had been a major source of funding for low-income housing. Cities and counties asked voters to approve new sources. Measure A was a $950 million bond that passed only by a narrow margin.

---

Case: 18-05062   Doc# 65-1   Filed: 04/11/19   Entered: 04/11/19 16:59:26   Page 21 of 28

GENETIC/BRAIN CONDITION

# EXHIBIT D

Case: 18 Filed: 04/11/19 16:59:26 Page 23 of 28



DAI SUGANO — STAFF PHOTOGRAPHER

ter coming home from school, Michael Mangaoang, 11, talks to his grandfather, Ferdinand Mangaoang, 62, who suffered a severe stroke in June 2016. The Silicon Valley Independent Living Center provided funds and helped the family modify their San Jose home to accommodate Ferdinand's disabilities.

## Home

ROM PAGE 1

isabilities and allow him o return home under the are of his family rather han in a skilled nursing acility.

"We really appreciate hat they put Ferdinand ack in his home so we can ake care of him," said Celia, who like daughter-inaw Armida had worked as a nurse in the Philippines. It's better here than at the nursing home. At least here it home, we can take care of him."

The center is requesting $35,000 from Wish Book, which Executive Director Sheri Burns said is enough to help about 15 people in nursing facilities move back home.

Since 1976, the nonprofit center has been trying to ease the financial burden for Santa Clara County residents with disabilities who want to remain in their homes. It is among 28 such Independent Living Centers in California and more than 400 nationwide.

Since 2011, the Silicon Valley Independent Living

such as Ferdinand live at home. They range in age from 18 to over 100, Burns said. Typically, the cost is a few thousand dollars to install things such as handrails, grab bars and ramps around the recipient's home.

Ferdinand's case posed more of a challenge. The organization provided $7,000 worth of home improvements for him — wheelchair ramps, hallway widening, sturdier flooring for a living room converted to his bedroom, a roomier refrigerator, high-powered vacuum and an air conditioner.

Though the stroke has greatly limited Ferdinand's ability to communicate, his family knows his subtle gestures — movements of the hands, eyebrows — that express his feelings. And Armida said her father-in-law is much happier since returning home.

At the nursing home, Armida said, he seemed checked out. When they told him he was coming home, she said, he gestured his excitement with his eyes — he painted a cheerful expression color, with a picture-puzzle put together by his grandchildren on his wall

tive shows on TV, she said.

Burns said the program provides a more efficient and personal level of care for people who couldn't otherwise afford the improvements needed to live at home.

"We see people as having inherent dignity," Burns said. "The whole idea of people being warehoused is antithetical to that. If they have the desire, we do what we can to help people move back home."

Each client is supported by a transition coordinator from the agency who helps the family work through all the medical, legal and financial bottlenecks and creates a personal plan.

Those facilitators regularly visit nursing homes looking for clients who could benefit from the program and provide followup assistance after the client returns home.

In Ferdinand's case, his son Robinson struck up a conversation with living center transition coordinator Tita Das at the nursing home where he was being housed.

"We needed a lot of home modifications," Das said. "It had to do all the research on what could be done."

pensive than the agency's typical cases, the family's eagerness to provide the high level of care Ferdinand would require — and the fact that his wife and daughter-in-law had some medical training — made his case compelling, Das said.

"She understands exactly what her husband's level of comfort is," Das said.

Current federal aid programs, Burns said, allow funding that otherwise would go toward monthly nursing home expenses to be spent on one-time improvements that allow the recipient to return home. But that program, begun in 2010, is set to expire at the end of this year unless Congress reauthorizes it.

Burns can't understand why lawmakers would disagree and continue something that replaces a monthly $8,000 expense with a one-time $8,000 cost to return home.

"I cannot believe Ferdinand is home already," Cecilia said, looking at her husband. "They are really helping us. I want them to continue the program that they can help more people."

Contact John Woolfolk at

# wishbook2018 | The Mercury News

To donate online visit wishbook.mercurynews.com

Name (Please print)

Address:

City, state and ZIP code

Daytime phone: (    )

Email address:

### WISH TO BE FULFILLED
☐ Specific wish _____ Person or group in need _____ $_____
☐ Specific wish _____ Person or group in need _____ $_____
☐ General donation _____ $_____

Total (tax deductible) $_____

### PAYMENT
☐ Check (Make checks payable to: Wish Book Fund)
☐ Visa  ☐ MasterCard  ☐ Discover  ☐ Amex

Credit card number: _____ CVC: ___

Signature: _____ Exp: ___

Mail donation to: The Mercury News Wish Book Fund
4 North 2nd Street, Suite 800
San Jose, CA 95113

Contributions: Tax-deductible donations of any amount are accepted. Wish Book also accepts donations of appreciated stock. Please email wishbook@bayareanewsgroup.com if you are interested in donating stock. If donations exceed the amount requested to fulfill a certain wish, excess funds will be used to fulfill other wishes. Tax ID: 77-0327663

### SHOWING OUR GRATITUDE
☐ Yes  ☐ No   Would you like your name to be included in a donor list published in The Mercury News and on wishbook.mercurynews.com
In honor of

# EXHIBIT E

Cecilia Mangaoang
2901 Capewood Lane
San Jose, CA 95132-1108
(408) 876-9950

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:<br>    Cecilia Mangaoang,<br><br>        Debtor.<br>-------------------------------------------------------<br><br>Cecilia Mangaoang,<br><br>        Plaintiff,<br><br>   vs.<br><br>SPECIAL DEFAULT SERVICES, INC.;<br><br>TRINITY FINANCIAL SERVICES, LLC;<br><br>NEWPORT BEACH HOLDINGS, LLC;<br><br>JOHN G. DOWNING;<br><br>Does # 1-10, inclusive,<br><br>        Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Adv. No. 18-05062

Bk. No. 18-52245 MEH

(Related Case Bk. #5:2017bk50208-MEH)

**VERIFIED <u>SECOND</u> AMENDED ADVERSARY COMPLAINT**

**Quiet Title,**

**FDCPA (15 U.S.C. § 1692-1692o),**

**Cancellation of Instrument,**

**Wrongful Foreclosure,**

**Avoidance of Wholly Unsecured Lien,**

**Negligence**

**[ Injunctive Relief Requested ]**

## PRELIMINARY NOTES

1. **Plaintiff requests an immediate injunction, <u>and/or reinstatement of the stay</u>,** enjoining the <u>Superior Court of California, County of Santa Clara</u>, from continuing with eviction (forcible entry / unlawful detainer) lawsuit <u>#18CV339119</u>, and enjoining Trinity from prosecuting such case, and from reporting negative information to any credit bureau pending

1

VERIFIED SECOND AMENDED ADVERSARY COMPLAINT

EXHIBIT F



STATE OF CALIFORNIA
**FRANCHISE TAX BOARD**
PO BOX 942857
SACRAMENTO CA 94257-0540

## Entity Status Letter

Date:     3/11/2019
ESL ID: 3128057590

According to our records, the following entity information is true and accurate as of the date of this letter.

Entity ID:  2548283

Entity Name:   AIDAN WEST FINANCIAL GROUP, INC.

- [ ] 1. The entity is in good standing with the Franchise Tax Board.
- [✓] 2. The entity is **not** in good standing with the Franchise Tax Board.
- [ ] 3. The entity is currently exempt from tax under Revenue and Taxation Code (R&TC) Section 23701.
- [ ] 4. We do not have current information about the entity.

The above information does not necessarily reflect:
- The entity's status with any other agency of the State of California, or other government agency.
- If the entity's powers, rights, and privileges were suspended or forfeited at any time in the past, or the entity did business in California at a time when it was not qualified or not registered to do business in California:
  - The status or voidability of any contracts made in California by the entity at a time when the entity was suspended or forfeited (R&TC Sections 23304.1, 23304.5, 23305a, 23305.1).
  - For entities revived under R&TC Section 23305b, any time limitations on the revivor or limitation of the functions that can be performed by the entity.

**Internet and Telephone Assistance**

Website:     **ftb.ca.gov**
Telephone: 800.852.5711 from within the United States
                916.845.6500 from outside the United States
TTY/TDD:   800.822.6268 for persons with hearing or speech impairments

FTB 4263A WEB (NEW 02-2012)

# EXHIBIT   G